SCARBROUGH, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–869–CR. Argued January 5, 1977.—
Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 354.)

88

92

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

ROBERT W. HANSEN, J.  The controlling case concerning the constitutionally assured right to speedy trial[1] is *Barker v. Wingo*.[2]  In that case more than five years elapsed until the petitioner was brought to trial for murder after his arrest.  During that time the prosecution obtained numerous continuances, initially for the purpose of trying petitioner's alleged accomplice first, so that his testimony, if convicted, would be available at petitioner's trial.  Finding lack of serious prejudice and desire for speedy trial by petitioner, the United States Supreme Court concluded that the petitioner was not deprived of his right to a speedy trial.

In *Barker* the nation's highest tribunal rejected the suggestion that the constitution requires a criminal defendant to be offered a trial within a specified time period.  Such a rule, the high court held, would require it "to engage in legislative or rulemaking activity, rather than in the adjudicative process to which we should confine our efforts."[3]  In fact, the high court found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months."[4]  Instead, the Court adopted a balancing-of-factors approach, stating: "The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed."[5]

The Court made clear that such balancing test "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis."[6]  The Court proceeded to identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his

[1] *See:* Sixth Amendment, U.S. Const., and art. I, sec. 7, Wis. Const.

[2] 407 U.S. 514 (1972).  Adopted as controlling in Wisconsin in *Day v. State*, 61 Wis.2d 236, 212 N.W.2d 489 (1973).

[3] *Id.* at 523.

[4] *Id.* at 523.

[5] *Id.* at 530.

[6] *Id.* at 530.

right. Conceding that some might express them in different ways, the high court went on to identify four such factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[7] The first two factors—length of delay and the reason for the delay—were found to be "closely related."[8] Each of the four factors in *Barker* was then expounded upon as follows:

(1) *LENGTH OF DELAY.* The Court explained the length of delay factor is to some extent a triggering mechanism.[9] Because of the imprecision of the right to speedy trial, the length of delay that will trigger or provoke further inquiry is necessarily dependent upon the peculiar circumstances of the case.[10] The nature of the charge and case makes a difference, in a particular prosecution, as to whether further inquiry is required. A court, trial or appellate, is not required to assume that a serious felony charge is ready for trial the day after arraignment. Time for preparation is clearly required by prosecution and defense alike. Additionally, time necessarily required for the hearing and disposition of pretrial motions, whether made by prosecution or defense, is time required for the orderly processing of the particular case. In the case before us, the first four months of the fifteen-month period between arraignment and trial were consumed by normal judicial proceedings leading up to the felony trial.

(2) *REASONS FOR DELAY.* As to reasons for delay, the factor "closely related" to length of delay, *Barker*

---

[7] *Id.* at 530.

[8] *Id.* at 531.

[9] *Id.* at 530, the Court continuing: "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."

[10] *Id.* at 530, 531, the Court adding: "To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."

prescribes that different weights should be assigned to different reasons. A deliberate attempt by the prosecution "to delay the trial in order to hamper the defense" is to be weighted heavily. To be considered but weighted less heavily is a "more neutral reason such as negligence or overcrowded courts." To be given no weight is "a valid reason, such as a missing witness," which serves "to justify appropriate delay."[11]

While not spelled out in *Barker,* an equally valid reason justifying the delay would be an extended adjournment sought and secured by the defendant. In the case before us the final three months of the time interval between arraignment and trial occurred at the specific request of the defendant. When the case was called for trial on July 23, 1975, the defendant refused to proceed and became recalcitrant in the courtroom. He secured a three-month adjournment, initially denied by the trial court, for the purpose of securing private counsel in place of court-appointed counsel who was ready to proceed.

(3) *ASSERTION OF RIGHT.* Under the *Barker* balancing-of-factors approach, the defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."[12] It likewise follows that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. Thus the rule is that the "defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right."[13]

However, the emphasis in *Barker* is on the defendant's seeking a speedy trial, rather than just seeking dismissal

[11] *Id.* at 531.
[12] *Id.* at 531, 532.
[13] *Id.* at 528.

on grounds of denial of such speedy trial. Thus the high court stressed the defendant's *"failure, following the pro forma motion to dismiss* filed in February 1962, to object to the Commonwealth's next two motions for continuances."[14] [Emphasis supplied.] Despite the *pro forma* motion to dismiss, the high court found the entire record strongly indicated that the defendant did not want a speedy trial.

██

In the case before us, the defendant followed his motion for speedy trial and motions for dismissal for denial of speedy trial with a demand for a three-month adjournment for substitution of counsel. Moreover, at the time of demanding such lengthy adjournment, the defendant stated in court: "I am giving up those motions for speedy trial. I was never in favor of that. At no time was I in favor of that. . . ." Without reaching the issue of waiver, the conclusion on this record, as in *Barker*, appears to be that this defendant did not want a speedy trial.

██

(4) *PREJUDICE TO DEFENDANT*. The fourth factor is "prejudice to the defendant" which should be assessed "in the light of the interests of defendants which the speedy trial right was designed to protect."[15] These interests are identified to be: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."[16] Of these three interests, *Barker* makes clear "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[17]

---

[14] *Id.* at 536.
[15] *Id.* at 532.
[16] *Id.* at 532.
[17] *Id.* at 532.

■

Impairment of defense is present (1) "if witnesses die or disappear during a delay," (2) "if defense witnesses are unable to recall accurately events of the distant past," or (3) if a defendant is "hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense."[18] Applying this test, the high court found prejudice due to a five-year delay to be minimal, noting there was no claim that any of Barker's witnesses died or otherwise became unavailable due to the delay, and finding that the trial transcript indicated only two very minor lapses of memory—one on the part of a prosecution witness—which were in no way significant to the outcome.

■

In the instant case, the defendant was the only defense witness. He claimed a lapse of memory on his part, but only as to a conversation he had with the victim of the robbery. This haziness would hardly be significant to the outcome of an alibi defense. Additionally defendant suggests that the prosecution witness, a police detective, who did not support defendant's alibi might have done so had the trial been held earlier. However defendant did not file his notice of alibi, as required by sec. 971.23(8), Stats., until nine months after the arraignment. This delayed awareness by anyone of the significance of the conversation allegedly had with the police detective—which conversation the detective testified took place an hour or more before the time of the robbery anyway. Refutation as well as corroboration of the asserted alibi were alike delayed by the defendant's belated filing of notice of alibi.

■

This then is the balancing-of-factors approach or test mandated by *Barker* and adopted by this court. There

[18] *Id.* at 532, 533.

remains the matter of methodology or application of the *Barker* test in a criminal prosecution in this state. The matter of the appropriate method of applying the *Barker* test to a particular case was determined in the recent *Norwood v. State*[19] decision of this court.

In that decision all members of the court agreed the right to speedy trial had not been denied. A five-person majority spelled out the step-by-step procedure to be followed. This majority held *Barker* mandates that "the threshold inquiry in speedy trial cases must always concern the length of delay," and that until it was determined that the length of delay was presumptively prejudicial, "no resort could be had to inquiring into the other factors."[20] *Barker* was quoted in its holding that " 'the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.' "[21]

The court majority then proceeded to examine the circumstances as to the delay in the case before it, separating the time interval between arrest and trial into three categories.

Applying the *Norwood* methodology, as spelled out in the majority opinion, to the case before us, we hold that the length of the delay here challenged, between arraignment and trial, divides itself into three separate categories under what *Barker* termed "the peculiar circumstances of the case." The three categories as to time are: (1) The four months elapsing between arraignment (August 2, 1974) and the initial trial date set (December 4, 1974) ; (2) the eight months elapsing between such initial trial date (December 4, 1974) and the date on

[19] 74 Wis.2d 343, 246 N.W.2d 801 (1976).
[20] *Id.* at 353, 246 N.W.2d at 807.
[21] *Id.*

which this defendant refused to proceed to trial and insisted upon a three-month adjournment (July 23, 1975); and (3) the three months elapsing between the date on which court and prosecution sought to proceed (July 23, 1975) and the date on which trial commenced (November 3, 1975).

In *Norwood,* as to the first such time slot of five months involving initial appearance, preliminary hearing, arraignment and initial setting of date for trial, the majority found the proceedings were carried out expeditiously without delay. As to the second time period, twelve months from the time of the first competency hearing to the second competency hearing, the majority held that delay due to commitment as incompetent to stand trial was justifiable delay under *Barker,* holding that a delay caused by defendant's incompetency to stand trial is intrinsic to the case itself. As to the third time category, five months involving pretrial motions made, pretrial hearings on such motions held and requests for reassignment and substitution of judge, the majority found that such defense motions were time consuming impediments to an early trial.[22] The court held that the defendant could not be heard to complain about delay caused by his own conduct.

Summing up the three periods of time involved, the majority concluded that considerably less than six months could be considered as delay attributable to the state. The court held that since "the length of the delay does not constitute a delay which is prejudicial[, t]herefore, there is no necessity for inquiring into the other factors that go into the balancing test."[23]

We now turn to the instant case. As to the first time period between arraignment and initial trial date, we

---

[22] *Id.* at 357, 246 N.W.2d at 809.

[23] *Id.* at 358, 246 N.W.2d at 809.

find the elapsed time to have been required by the pretrial motions made by defendant, including his request for deferral on September 17, 1974. Such periods of time necessarily required for the hearing and disposition of pretrial motions, whether made by prosecution or defense, are not to be considered as delays caused by either party. In fact, they are not "delays" at all, as determined by our court in *Norwood, supra*, at 354. These periods are required for the orderly and proper consideration of pretrial motions properly brought by either party in a criminal case. As the high court said in *Barker*, ours is a system where justice is supposed to be swift but deliberate. The high court went on to state: " '[I]n large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect upon the rights of the accused and upon the ability of society to protect itself.' "[24] We do not hold this four-month period to be attributable to either state or defense since it was time required for the orderly administration of criminal justice, and it is not to be included in applying the "length of delay" factor to the circumstances of the case before us.

As to the third time category, the three months between defendant's demand for an extended adjournment and the actual trial date, we find responsibility for it is attributable to defendant. When this case was called for trial with the court able and the prosecution prepared to proceed, the defendant refused to proceed. While he acknowledged that his court-appointed attorney was a "good attorney," he informed the trial court that he had

[24] *Barker v. Wingo, supra,* at 521, n. 15, quoting *United States v. Ewell,* 383 U.S. 116, 120 (1966).

no confidence in his attorney and no intention of proceeding to trial.

The attorney appointed by the court had been designated as defense counsel since April of 1975. The defendant had three months' time within which to seek different counsel long before the actual day on which the case was first called to trial in July, 1975. Instead he waited until the day of trial and threatened to disrupt the proceedings if his request for an extended adjournment was not granted.

This court can and does take judicial notice of its previous decision in *State v. Scarbrough*[25] in which this same defendant, on the day of trial in 1971, stated he did not want and would not permit court-appointed counsel to represent him. He further stated that he would disrupt the trial if another lawyer was not appointed. As we there held as to this same defendant, right to counsel does not include the right to dismiss appointed counsel "at the eleventh hour" and to reject "the reasonable efforts of the court to furnish him with the assistance of counsel."[26]

In the case now before us the consequence of defendant's intransigence was a three-month delay from a date on which the case could have been tried to the date on which it was tried. Responsibility for such final period of delay is entirely and completely attributable to this defendant. In computation or consideration of the factor of length of delay here involved, we do not include this final three months of delay requested and caused by this defendant.

As to the second time category, the eight months elapsing between the initial and the first trial date when the court was ready to proceed, we find that such

[25] *State v. Scarbrough*, 55 Wis.2d 181, 197 N.W.2d 790 (1972).
[26] *Id.* at 188, 197 N.W.2d at 793, 794.

delay was caused entirely by the overload of felony cases, particularly those requiring jury trials, in the largest circuit in our state's court system. No affirmative action by either prosecution or defense contributed to or aggravated this period of delay in bringing this case to trial. The record shows no dilatory or delaying tactics on the part of either state or defendant.

The record also shows, however, no objection by either prosecution or defense to the various adjournments involved, all court-ordered. While the record does show motions by defendant to dismiss on the ground of denial of speedy trial, no objection to a particular adjournment necessitated by court congestion is recorded. Seeking a speedy trial and seeking adjournment by reason of lack of speedy trial are not entirely synonymous undertakings.

In *Barker*, in response to a state motion for continuance, defendant responded with a motion to dismiss the indictment. The United States Supreme Court commented: "The record does not show on what ground this motion was based, although it is clear that no alternative motion was made for an immediate trial."[27] However, also under *Barker*, we are required to give consideration to the "neutral reason" for delay of overcrowded courts although it should be weighted less heavily. We are permitted to take judicial notice of the problem of inadequate judicial manpower in Milwaukee county in the exercise of the superintending control over state trial courts granted by the constitution.[28] We cannot however, under *Barker*, fail to give weight to delays in bringing criminal cases to trial caused by inadequate judicial resources and mounting caseloads.

Nonetheless, under the circumstances of this case, with good faith and best efforts of the assigned trial judges

---

[27] *Barker v. Wingo, supra*, at 535.

[28] Art. VII, sec. 3, Wis. Const. This case congestion problem is particularly pronounced as to trials in criminal cases.

not challenged, and with no objections made by the parties to the individual adjournments necessitated by congested court calendars, we hold this eight-month delay in this case, in the words of *Norwood,* "does not constitute a delay which is prejudicial. Therefore, there is no necessity for inquiring into the other factors that go into the balancing test."[29] So concluding, applying the majority rule in *Norwood,* we affirm the trial court holding that there was no denial of the right to speedy trial to this defendant.

*By the Court.*—Judgment affirmed.

---

[29] *Norwood v. State, supra,* at 358, 246 N.W.2d at 809.