Clyde James SCARBROUGH, Petitioner,

v.

John GAGNON, Respondent.

Civ. A. No. 78-C-168.

United States District Court,
E. D. Wisconsin.

Dec. 4, 1979.

Ben Kempinen, Staff Atty., Legal Assistance to Inmates Project, Madison, Wis., for petitioner.

Bronson C. LaFollette, Atty. Gen., Michael R. Klos, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Petitioner Clyde James Scarbrough challenges his state court conviction for robbery contrary to § 943.32(1), Wis.Stats., claiming that he was denied his right to a speedy trial as guaranteed by the sixth and fourteenth amendments to the United States Constitution. Petitioner is currently in the custody of the State of Wisconsin and has exhausted his state court remedies. See *Scarbrough v. State,* 76 Wis.2d 87, 250 N.W.2d 354 (1977). The Court has jurisdiction to consider petitioner's claim for habeas corpus relief pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 2254(a).

Petitioner was arrested on July 26, 1974, by Milwaukee City police. The following day he was charged by information with two counts of armed robbery. Count one of the information alleged that on July 25, 1974, petitioner robbed Robert Bruce Wills of $100 in cash while threatening Wills with a piece of broken glass. Count two of the information alleged that on July 24, 1974, petitioner robbed Thomas Richard Higdon of $35 in cash while threatening Higdon with a knife. At the initial appearance on July 27, 1974, petitioner was appointed counsel and bail was set at $30,000. Petitioner remained incarcerated in the Milwaukee County Jail until November 8, 1974, at which time he was transferred to the Wisconsin State Prison at Waupun following revocation of his parole from an earlier Wisconsin sentence.

On August 1, 1974, a preliminary hearing was held before County Judge Terence T. Evans who found probable cause as to both counts of the information and bound petitioner over for trial. On August 2, 1974, petitioner was arraigned before Circuit Judge Hugh R. O'Connell and at that time made a demand for a speedy trial. Petitioner's case was assigned to Circuit Judge John F. Foley for trial. On September 17, 1974, Judge Foley scheduled a jury trial for December 4, 1974.

On December 4, Judge Foley, by motion of the Court, adjourned the case until December 9, 1974. On December 9, the Court adjourned the case until January 28, 1975. On January 28, the case was again adjourned by motion of the Court, this time until April 16, 1975. On April 16, the Court adjourned the case until May 9, 1975. On May 9, Judge Foley ordered the case transferred to Circuit Judge Victor Manian who set a trial date for July 17, 1975. On July 17, the case was adjourned until July 23, 1975, over the objection of petitioner's counsel. On July 21, 1975, petitioner filed a motion to dismiss on the ground that he had been denied his constitutional right to a speedy trial.

On July 23, 1975, it appeared as if the case would finally proceed to trial. Judge Manian denied petitioner's motion to dismiss, granted his motion to sever the two counts, and announced that the first count would be tried that day. At this point, petitioner asked to be heard and informed the Court that he wished to engage new counsel and that he would need a continuance in order to do so. The request was denied, but as soon as the jury panel entered the courtroom, petitioner started loudly proclaiming his dissatisfaction with his attorney. Petitioner was removed from the courtroom, but apparently this outburst caused Judge Manian to reconsider petitioner's request. Petitioner was brought into chambers and questioned at length. Petitioner repeatedly insisted on an adjournment, even though he was informed that the next available trial date was not until November. When asked to reconcile his demand for a speedy trial with his insistence on an adjournment, petitioner replied: "I am giving up those motions for a speedy trial. I was never in favor of that. At no time was I in favor of that for those motions that I was brought to the court on speedy trial. I had never heard of them. I never read those motions." (Tr. at 85) Judge Manian then reluctantly granted the adjournment and set trial for November 3, 1975.

A jury trial was held on the first count of the information on November 3 and 4. At that time petitioner renewed his motion to dismiss on the ground that he had been denied a speedy trial, and the motion was again denied.

At trial, Robert Bruce Wills testified that he met petitioner about 10:00 P. M. on July 25, 1974, and agreed to accompany him to a party that petitioner knew of. Wills told the Court that he and petitioner took a taxi to the corner of 19th and Vine Streets in the City of Milwaukee and began walking across a field toward the supposed party. Petitioner then allegedly wrestled Wills to his knees and held a piece of broken glass to this throat. Petitioner then removed $100 from Wills' wallet. Wills' identification was corroborated by the testimony of Donald Shumann, the taxi driver who had driven them to 19th and Vine.

Petitioner testified in his own behalf and attempted to establish an alibi for the time in question. He stated that at 10:30 P. M. on the night of the robbery he was walking near an A & P store located on the corner of Fifth Street and North Avenue. As he was passing by, petitioner testified, a window was broken and the police immediately arrived on the scene. According to petitioner, he then spoke with Detective Lemoyne Richardson of the Milwaukee Police Department, one of the officers who answered the call at the A & P.

Detective Richardson was then called by the State as a rebuttal witness. Richardson testified that he had been summoned to the A & P on the night in question and while there had engaged in conversation with a black male. He further testified that he was unable to identify the man to whom he had spoken and that the time of the call had been about 9:30 P. M.

Following the completion of testimony, the jury retired and found petitioner guilty of robbery, contrary to § 943.32(1), Wis. Stats. Petitioner was sentenced to an indeterminate term of not more than eight years, to run consecutively to the term that petitioner was then serving. The second count of the information was dismissed by the Court on December 4, 1975.

Petitioner appealed his conviction by writ of error to the Wisconsin Supreme Court, specifically raising the issue of the denial of his right to a speedy trial. The judgment of the trial court was affirmed by the high court of Wisconsin on February 15, 1977, in *Scarbrough v. State,* 76 Wis.2d 87, 250 N.W.2d 354 (1977).

█ Any discussion of the constitutional right to a speedy trial must begin with *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In that case, the United States Supreme Court rejected the idea that a uniform time limit could be fixed for determining at what point a defendant had been denied a speedy trial and, instead, adopted an *ad hoc* balancing test

based on certain enumerated factors. The factors identified by the Court were: (1) the length of the delay, (2) the reason for the delay, (3) whether or not the defendant asserted his right to a speedy trial, and (4) the extent to which the defendant was prejudiced by the delay. Petitioner's claim, then, depends upon the application of these four factors to the factual circumstances of his case.

*Length of Delay*

■ The length of the delay before trial is referred to in *Barker* as a "triggering mechanism." *Id.*, at 530, 92 S.Ct. 2182, 2192. In other words, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* In the present case, there was a delay of over fifteen months between petitioner's arrest and his trial. Such a delay is abnormally long and is sufficient to trigger further inquiry into the surrounding circumstances. See *United States v. Strunk*, 467 F.2d 969 (7th Cir. 1972) (10-month delay sufficient to trigger further inquiry).

*Reasons for Delay*

■ The delay in petitioner's case must be broken down into three component periods. The period from petitioner's arrest on July 25, 1974, to his original trial date on December 4, 1974, is attributable to the normal time that it takes to prepare a case and bring it to trial. Both petitioner and the State agree that the period between December 4, 1974 and July 23, 1975, the date the case was actually ready to go to trial, is attributable to the overcrowded dockets of the Milwaukee court system. Finally, the period between July 23, 1975 and November 3, 1975, the date of petitioner's trial, is attributable to petitioner's insistence on procuring an adjournment. Thus, while petitioner is responsible for a portion of the delay, the Government too shares responsibility.

It should be noted that the Supreme Court in *Barker* specifically instructed that:

" * * * A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. * * * " *Id.*, 407 U.S. at 531, 92 S.Ct. at 2192.

Thus, while the state of the Milwaukee court system does not excuse the Government's responsibility for the delay, it will not be weighted too heavily against it. The delay attributable to the petitioner, of course, will be assigned no weight whatsoever.

*Petitioner's Efforts to Assert His Right to a Speedy Trial*

■ The Supreme Court in *Barker* rejected the idea that failure by the defendant to effectively assert his right to a speedy trial automatically results in the waiver of that right. The Court, however, did indicate that this was a factor to be considered in determining whether the defendant's right to a speedy trial has been violated. While a defendant has no duty to bring himself to trial, he must show some interest in obtaining a speedy resolution.

■ In the present case, there are some indications that petitioner was concerned with the delay his case had encountered. At his arraignment, petitioner made a demand for a speedy trial, and he twice moved to dismiss on speedy trial grounds. On the other hand, he made no effort to oppose the series of adjournments that were granted, and he later repudiated his motions to dismiss. Most damaging to petitioner, however, is his insistence on obtaining a four-month adjournment on the day his trial was finally scheduled to begin. This was not the action of a man who was overly concerned with receiving a speedy trial. Thus, while it cannot be said that petitioner waived his right to a speedy trial, it must be concluded that petitioner expended minimal effort in asserting that right.

*Prejudice*

Up to this point, an examination of the circumstances surrounding the delay between petitioner's arrest and trial does not reveal a compelling case of constitutional injustice. While the delay was of sufficient duration to require further inquiry, it is apparent that the responsibility for the delay does not rest solely with the Government. Petitioner's actions also contributed to the delay, and, further, petitioner made little attempt to oppose the portion of the delay that was attributable to the Government.

Petitioner's case for habeas corpus relief is correspondingly weak. Nonetheless, were petitioner able to show that he was substantially prejudiced by the delay, the Court might be inclined to minimize petitioner's role in creating it in the first place. On the facts of this case, however, the Court is unable to conclude that petitioner was so prejudiced.

It is true that petitioner's stay in Waupun was somewhat less advantageous than it might have been had he not been awaiting trial in that he was not eligible for transfer to a medium or minimum security institution while the charges against him were pending. On the other hand, the incarceration itself was not attributable to the delay but rather to the revocation of petitioner's parole from an earlier conviction.

■ The most important question, however, is whether the delay had an adverse effect on petitioner's ability to effectively present his defense. See *United States v. Macino*, 486 F.2d 750 (7th Cir. 1973). Petitioner argues that the delay hurt the effectiveness of his alibi defense in that Detective Richardson was unable to positively identify him as the man he spoke with in front of the A & P on the night of the crime. There are, however, two flaws in this argument. First, petitioner has made no showing that Detective Richardson's inability to identify him was in any way due to the time that elapsed after the alleged meeting. Second, the real flaw in petitioner's alibi defense was not the lack of posi-

tive identification but rather was Detective Richardson's testimony and on-the-scene report which indicated that the meeting at the A & P occurred some forty-five minutes before the robbery. As the trial judge instructed the jury, a purported alibi which leaves it possible for the accused to be the guilty party is no alibi at all. Thus, it was not the delay before trial which was responsible for the failure of petitioner's alibi defense. Consequently, there has not been a sufficient showing of prejudice to outweigh petitioner's own part in causing the delay, and the petition for habeas corpus must be denied.

IT IS THEREFORE ORDERED that the petition for habeas corpus filed by Clyde James Scarbrough in the above-entitled action be and hereby is denied.