STATE of Wisconsin, Plaintiff-Respondent,

v.

Henry W. AUFDERHAAR, Defendant-Appellant.†

Court of Appeals

*No. 03–2820–CR. Submitted on briefs August 30, 2004.—
Decided October 6, 2004.*

2004 WI App 208

(Also reported in 689 N.W.2d 674.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *J. Paul Neumeier, Jr.* of *Krek & Brantmeier, S.C.* of Jefferson.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J. The major holding here is that when this court accepts an interlocutory appeal, the appellant is limited to briefing only those issues presented in the petition for leave to appeal and may not raise additional issues without the prior consent of the court. In this case, Henry W. Aufderhaar raises five issues on appeal, two of which were not presented in his petition. We refuse to address them because interlocutory appeals are disfavored and when we do take them, it is to address a specific issue or issues that need resolution prior to finality. As to the three issues we do consider, we hold that the court did not lack personal jurisdiction over Aufderhaar because he had sufficient notice of the delinquency petition when he received notice of the waiver hearing, that the 502–day delay from the filing of the delinquency petition to the filing of the waiver petition was not an attempt by the State to manipulate the system so that he could be tried as an adult, and that Wisconsin law does not recognize a due process violation if the delay was due to the State's negligence. We affirm.

¶ 2. Aufderhaar was fifteen years old and living with his parents in Jefferson county[1] on June 4, 2001, when he was interviewed by a police officer about five counts of second-degree sexual assault of a child and

---

[1] The record lists a Whitewater street address for Aufderhaar. Whitewater is located in Walworth county; however, neither party disputes that Aufderhaar's county of residence at the time of these alleged incidents was Jefferson county.

two counts of fourth-degree sexual assault of a child. Later that month, on June 29, he moved with his parents. The family lived with Aufderhaar's grandfather for approximately two weeks and then moved to the state of Montana. On August 21, the district attorney for Jefferson county filed a delinquency petition, but when authorities learned that Aufderhaar had moved with his family to Montana, the file was transferred to Walworth county, where the incidents were alleged to have occurred.

¶ 3. On October 8, the Walworth county intake worker attempted to mail documents containing the pending charges to Aufderhaar and his parents in Montana, but the mail was returned as "Attempted-Not Known." On October 26, a delinquency petition was filed in Walworth county with a return date of November 8. On that date, Aufderhaar did not appear for his initial plea hearing and a capias was ordered. Thereafter, the case sat dormant for about a year and a half.

¶ 4. On March 6, 2003, the Walworth County Juvenile Court Clerk received a telephone call from Montana authorities that Aufderhaar was involved in a juvenile matter in that state relating to sexual behavior. The clerk forwarded this information to the district attorney's office and shortly thereafter received a petition for waiver of juvenile jurisdiction into adult court. The waiver petition was filed on March 12. At this point in time, Aufderhaar was over seventeen years old. The Montana authorities had given the Walworth clerk a new address for Aufderhaar, so she sent the necessary papers to that new address. The papers were not returned. On April 23, the court agreed at the waiver hearing to waive Aufderhaar in absentia into adult

179

court and subsequently issued an order to that effect.[2] A criminal complaint was filed, and a warrant was issued.

¶ 5. On October 2, Aufderhaar appeared in Walworth county and challenged the adult court's personal jurisdiction over him. He pointed out that WIS. STAT. § 938.27(3)(a)1 (2001–02)[3] mandates the juvenile court to notify the child and parents of all hearings, that WIS. STAT. § 938.273 provides for a continuance and personal service if there is no appearance at a proceeding, and that the same statute allows for service by certified mail in the event personal service is deemed to be impracticable. Aufderhaar alleged that because the statute was not followed as regards to him, the juvenile court had no authority to waive him into adult court, presumably for lack of personal jurisdiction. In the alternative, Aufderhaar argued that the waiver in absentia violated due process.

¶ 6. The trial court rejected these two theories. It found that Aufderhaar had absconded with his family in order to avoid prosecution. The trial court noted that although the juvenile court did not expressly say at the waiver hearing that any attempt at service would have been ineffectual because the Aufderhaars were intent on avoiding service, such an assumption was implicit in its mention of the fact that there was a warrant out for Aufderhaar's father, who was "on the run." The trial court concluded that it was correct to assume service would have been ineffectual. Alternatively, the trial court ruled that Aufderhaar had notice of the waiver

---

[2] Judge James L. Carlson conducted this hearing and waived Aufderhaar into adult court.

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

hearing because the mail about that hearing is presumed to have reached him since it was not returned as undeliverable. In the trial court's view, this notice was sufficient to defeat the claim of lack of personal jurisdiction.

¶ 7. Aufderhaar also claimed that the 502–day delay[4] in the filing of the juvenile waiver petition was unreasonable and prejudiced him; despite the fact that the State knew or should have known how to reach him in Montana if it really wanted to proceed with the delinquency petition in a timely manner, it sat on its hands allowing him to get older. The trial court held that while the State may have been negligent in not acting in a timely manner, it did not do so with the intent to manipulate the system so as to be able to try Aufderhaar as an adult.

¶ 8. Aufderhaar then filed a petition for leave to appeal a nonfinal order. Three issues were raised. We set them forth verbatim in the footnote.[5] While the

---

[4] At the October 2, 2003 motion hearing, Aufderhaar mentioned a 540–day delay. This figure was merely an approximation, based on the fact that roughly eighteen months had passed.

[5] The petition for leave to appeal presented the three issues in the following manner:

A. When the juvenile court did not provide the juvenile proper notice of a waiver hearing pursuant to [WIS. STAT. §§ 938.27 and 938.273] did the trial court err in placing the burden on the juvenile to prove that he did not get notice of the hearing in order to have the matter returned to juvenile court after being waived *in absentia* into adult court.

B. When the juvenile court failed to grant a continuance and order service of the notice of the waiver hearing either personally or by certified mail upon the juvenile's failure to appear, as required by sec. 938.273, Stats., did the trial court err in failing to return the matter to juvenile court?

statement of issues in the petition was confusing as to the exact legal basis justifying relief, the body of the petition sufficiently set forth his arguments. He contended that there was an unreasonable delay in the filing of the waiver petition (502 days), that he was not given proper notice of the waiver hearing and that waiver granted in absentia denied him due process. The State opposed the petition for leave to appeal but did not do so on the merits of any of the issues raised. Rather, it simply repeated the generalization that interlocutory appeals are not favored in criminal cases.

¶ 9. Faced with what we had, we had serious questions. We wondered how the State could explain its 502–day delay, why WIS. STAT. § 938.273 had not been followed, and how a juvenile could "abscond" when he moved with his parents to another state. We granted the petition for leave to appeal the nonfinal order.

¶ 10. In his brief-in-chief, Aufderhaar has raised and discussed the same three issues he assembled for his petition, albeit with different and more concise wording. While the State appears to criticize this rewording, we do not. The rewording of the original issues is more narrowly focused and concise. It also avoids nonessential facts and better connects the essential, critical facts with the precise legal issues in a way that allows this court to anticipate the arguments. We set

---

C. When the State delayed the filing of a waiver petition for 502 days after the filing of the delinquency petition, during which time the State knew where the juvenile was but took no action to have him returned to Wisconsin—a delay that the trial court acknowledged as negligence—did the trial court err in determining that the delay did not warrant dismissal of the charges?

182

forth the rewording of the issues in a footnote for those who wish to compare the statement of issues.[6]

¶ 11. However, two other issues are raised in the brief that were not raised in the petition. Aufderhaar alleges that the waiver petition was insufficient as a matter of law and that the delinquency petition should be dismissed because it was not timely filed. For the following reasons, we will not consider these two issues.

¶ 12. As the State observes, interlocutory appeals are not appeals of right and one must obtain permission to pursue such an appeal by filing a petition. *See* Wis. Stat. Rule 809.50(1). As the State also observes, the right to appeal is very narrowly construed even once a petition is granted, as shown by the requirement to separately file a petition for cross-appeal from the same interlocutory order in which a petition has already been granted. *Fedders v. American Family Mut. Ins. Co.*, 230 Wis. 2d 577, 580–82, 601 N.W.2d 861 (Ct. App. 1999). As the State posits, the logical conclusion is that a person who is granted leave to appeal a nonfinal order is limited solely to those issues outlined in the petition to the court of appeals.

---

[6] In his brief, Aufderhaar words the issues as: (1) "Did the failure of the juvenile court to ensure proper service of process under [Wis. Stat. § 938.273] deprive the court of personal jurisdiction over the defendant?" (2) "Did the State intentionally delay the filing of the waiver petition . . . for the purpose of manipulating the system?" And (3) "Did the State's negligence in filing the waiver petition 502 days after the filing of the delinquency petition in this matter constitute a due process violation requiring dismissal?"

183

¶ 13. More to the point, however, is the reason behind this limitation. We do not lightly grant a petition for leave to appeal. *See, e.g., State ex rel. A.E. v. Circuit Court for Green Lake County,* 94 Wis. 2d 98, 102 (interlocutory appeals undesirable), 288 N.W.2d 125, *modified per curiam,* 94 Wis. 2d 105a, 292 N.W.2d 114 (1980), The general policy of this court is to avoid piecemeal disposal of litigation. *See, e.g., id.* at 101. Moreover, as Michael S. Heffernan cogently stated in the State Bar CLE book, APPELLATE PRACTICE AND PROCEDURE IN WISCONSIN § 9.5 (3d ed. 2003), it is also in recognition of our heavy case load. Heffernan further points out that the policy against granting interlocutory appeals is particularly strong in criminal prosecutions. *See id.* Delays in that area are "inimical to an effective criminal justice system." *Id.* (citing *A.E.,* 94 Wis. 2d at 102).

■

¶ 14. Against this backdrop, WIS. STAT. § 808.03(2) details the circumstances where we will grant a petition for leave to appeal a nonfinal order: (1) if the issue or issues will materially advance termination of the litigation or materially clarify further proceedings, (2) will protect the petitioner from irreparable injury, or (3) will clarify an issue of general importance in the administration of justice. As Heffernan explains, implicit in our consideration of each factor is the question of whether the petition shows a substantial likelihood of success on the merits. *See* Heffernan, *supra,* at § 9.4. "Only in this context can the general criteria listed in section 808.03(2) be given much significance." Heffernan, *supra,* at § 9.4. It therefore stands to reason that we are only interested in determining issues that have a likelihood of success. For a party to add issues after a

petition is granted where we have not had the opportunity to assess the likelihood of success of that issue is counterproductive to the process and undermines the rationale for our approach to nonfinal orders.

¶ 15. We are cognizant that this is an appeal from a juvenile waiver into adult court and that the supreme court in *A.E.* has urged careful consideration to the merits presented by these petitions. *See A.E.*, 94 Wis. 2d at 105d, 292 N.W.2d 114 ("Given the significance of a waiver of juvenile jurisdiction orders, we urge that the court of appeals, *in the exercise of its discretion,* give careful consideration to the merits presented by appeals from such orders." (Emphasis added.)). This entreaty does not mean we no longer have the discretion to accept or reject juvenile waiver appeals and must accept all such orders regardless of the merits of the issue or issues raised. To the contrary, the *A.E.* court expressly recognized that we still have the discretion to accept or reject the petitions. It only urged that we carefully consider the merits presented. Moreover, *A.E.* specifically held that juvenile waiver orders are not appealable as of right. *Id.* at 105a.

¶ 16. Therefore, we will only grant petitions for leave to appeal where the issue or issues raised in the petition meet one or more of the criteria in Wis. STAT. § 808.03(2). In fact, even if there are several issues raised in the petition, but not all meet the criteria, we may well order that the briefing be limited to only those issues we feel have merit under the statute.

¶ 17. We are not interested in spending our valuable time addressing issues that do not meet the criteria just because the case is already in limbo pending our review and we have the record and the parties before

185

us. The mere fact that proceedings have ground to a halt pending review of a nonfinal order is not sufficient reason for us to reach any and all issues an appellant can conjure up. To do so would cause further delay in the trial court because we would be spending extra time reading, researching, and writing on these extra issues. We will not allow our time to be used unwisely.

¶ 18. We now reach the merits. It is undisputed that the juvenile court erred when, following Aufderhaar's nonappearance at his initial hearing to respond to the delinquency petition, it failed to comply with Wis. Stat. § 938.273, which requires the court to continue the matter and to order either personal service or service by certified mail unless it finds that such service would be ineffectual. The question to be decided is the legal ramifications of such a failure.

¶ 19. The State first argues that regardless of the trial court's failure to say so, a continuance would have been useless because personal service or service by certified mail would have been ineffectual. The State submits that it did not know where Aufderhaar was, other than that he was somewhere in Montana. We reject this argument. Based on the factual record before us, the State could easily have found Aufderhaar. It knew Aufderhaar was attending school in Hot Springs, Montana. It would have taken little effort to obtain the address. Instead, the State simply sat on its hands and did nothing.

¶ 20. Alternatively, the State appears to argue that if a mailing comes back as undeliverable, the State has no obligation to find the new address or otherwise

look for the juvenile. By this blanket statement, we assume the State means this to be the case even if there is information from which there is a reasonable expectation that service could eventually be accomplished. The State cites absolutely no authority for this proposition but simply argues that, because Aufderhaar has not submitted any authority to negate the State's position, we must accept the State's argument.

¶ 21. We will not do so. A district attorney, like all attorneys, is an officer of the court. *See* WIS. STAT. § 946.65(2). As an officer of the court, a district attorney must exercise "reasonable diligence" in attempting to locate victims and witnesses prior to asking for adjournments. *See Scarbrough v. State,* 76 Wis. 2d 87, 96, 250 N.W.2d 354 (1977) (missing witness as a valid reason to adjourn a trial); *State v. Williams,* 2004 WI App 56, ¶ 37, 270 Wis. 2d 761, 677 N.W.2d 691 (citing *Scarbrough* for proposition that locating the missing victim was a valid reason to delay trial and noting that the prosecutor had exercised "reasonable diligence" in finding her), *review denied,* 2004 WI 50, 271 Wis. 2d 110, 679 N.W.2d 546 (Wis. Apr. 20, 2004) (Nos. 03-0603-CR, 03-0604-CR). It is not too much to require that a district attorney also exercise due diligence in attempting to notify a juvenile that the force of government has caused a petition to be filed against him or her. If our system of justice requires due diligence on the part of plaintiffs in civil cases to serve a defendant personally where they have information concerning the possible whereabouts of the defendant, requiring them to inquire further when they possess information that could reasonably be expected to lead to the discovery of the party sought, *see, e.g., West v. West,* 82 Wis. 2d 158, 166–67, 262 N.W.2d 87 (1978);

187

*Welty v. Heggy*, 124 Wis. 2d 318, 325, 369 N.W.2d 763 (Ct. App. 1985), then we conclude district attorneys have an equivalent obligation to locate the subject of a juvenile proceeding, whose liberty interests are at stake.[7]

¶ 22. Perhaps the State thought since Aufderhaar was now out of state, he was no longer a threat to the citizens of this state and decided to let him be. The State may have taken solace in the fact that, if Aufderhaar came back to Wisconsin, there would be a capias waiting for him. We do not know the precise reason why the State did not proceed to notify him, but the fact is that the statute was not followed and the error is real. The question is what to do about it. This question was not addressed by the State in its response to Aufderhaar's petition for leave to appeal and the non-response helped fuel our granting of the petition.

¶ 23. The State now posits that, assuming it erred in failing to follow the statute regarding notification to

---

[7] The trial court commented that the juvenile court made an implied finding that service would have been ineffectual because the father was "on the run." The State does not defend the trial court's order on this ground. We briefly address the issue, however, because it arguably is, after all, one of the reasons why the trial court denied the motion for dismissal or transfer to juvenile court. We reject this rationale. First, the record shows no factual basis for finding that the father had moved to avoid the law other than that he had two pending misdemeanors. Second, even had the father moved to avoid the law and would work to avoid personal service, we fail to see how sending certified mail to the correct mailing address in Montana would somehow have been a useless exercise. And third, we do not understand how a juvenile can be held to be vicariously liable for the actions of a parent in moving out of state such that the State is relieved from even trying to get the correct address and mailing a document to that address by certified mail.

Aufderhaar when the juvenile proceeding commenced, this error was nonjurisdictional. For this proposition, the State relies on *State v. Jermaine T.J.*, 181 Wis. 2d 82, 85–88, 510 N.W.2d 735 (Ct. App. 1993). Just as was the case here, Jermaine failed to appear for a hearing and the court did not thereafter continue the case for the purpose of securing personal service or, failing that, service by certified mail. *See id.* at 86–87. Instead, the juvenile court, like the juvenile court here, issued a capias. *See id.* at 87–88. We held that failure to comply with the mandatory language of WIS. STAT. §§ 48.273(1) and 48.28 (now WIS. STAT. §§ 938.273(1) and 938.28) did not deprive the court of personal jurisdiction. *Jermaine T.J.*, 181 Wis. 2d at 85, 88.

¶ 24. Aufderhaar attempts to distinguish *Jermaine T.J.* on its facts. There, Jermaine had already been placed in secure detention following the commission of a crime, delinquency and waiver petitions had been filed the same day he was picked up, and he had his first hearing before the juvenile court within three days thereafter. *Id.* at 85. It was only after he was released following his secure detention hearing and then failed to attend the next hearing a few weeks later that the problem of proper notification of *that* hearing cropped up. *Id.* Aufderhaar argues that the juvenile court in *Jermaine T.J.* gained personal jurisdiction over Jermaine when he personally appeared at both the plea and waiver hearings, and therefore, failure by the court to adhere to the notification procedures in a future hearing had no bearing on personal jurisdiction. Aufderhaar points out that, in his case, however, the notification problems existed at the outset and he never submitted himself to the jurisdiction of the juvenile court until after waiver had already occurred. In Aufderhaar's view, the facts make all the difference.

189

¶ 25. Aufderhaar's argument is unavailing. Personal jurisdiction over Jermaine was not decided on the fact that Jermaine had previously subjected himself to the jurisdiction of the court before the notification snafu appeared. Rather, the *Jermaine T.J.* court decided that, regardless of the mandatory procedural requirements of how to notify a juvenile, the failure to follow the statute did not go to personal jurisdiction. *See id.* at 85, 88. Instead, it was the petition itself that gave the court personal jurisdiction over the juvenile. *See id.* at 90–91. We compared the juvenile petition with the criminal complaint, *id.*, which the supreme court had explained in *State v. Smith*, 131 Wis. 2d 220, 238–40, 388 N.W.2d 601 (1986), is the vehicle by which a court gains personal jurisdiction over the person named in the complaint. We held, "As the supreme court concluded in Smith, we conclude that it is the delinquency petition that is the critical procedure for acquiring personal jurisdiction over the juvenile." *Jermaine T.J.*, 181 Wis. 2d at 91 (citation omitted). In *Smith*, the court wrote:

> The critical relationship between the complaint and personal jurisdiction is indicated by the constitutional purpose for personal jurisdiction. Personal jurisdiction assures that the *defendant has a sufficient relationship to the jurisdiction exercising authority* and that the defendant has notice of the charges. The *notice function is accomplished by requiring a complaint to include the essential facts* constituting the offense charged . . . .

*Smith*, 131 Wis. 2d at 239 (emphasis added).

¶ 26. Therefore, when a complaint is prepared, it assures a sufficient relationship between the government and its power to bring the named person before

the court. When that person receives the complaint, that person is thereby notified that the force of government has caused an action concerning him or her to be filed in court and that the court has personal jurisdiction over him or her.

¶ 27. Here, it is true that the delinquency petition, though filed in court, was never in Aufderhaar's hands before the waiver hearing took place. However, at the time of the hearing, Aufderhaar is presumed to have had notice that such a petition existed because the notice of waiver hearing was sent to his correct Montana address before the waiver hearing and that notice was never returned as undeliverable. The law in this state is that when notice is sent by mail and it is not returned, the presumption is that it was delivered. *See State ex rel. Flores v. State*, 183 Wis. 2d 587, 612, 516 N.W.2d 362 (1994). Moreover, the record shows that this same post office address was used by Aufderhaar on his bail slip regarding this case.

¶ 28. When Aufderhaar received the waiver petition in the mail, that petition notified him that the power of the government had called him to account for an allegation in the criminal law and put him on constructive notice that the allegation had been reduced to a legal document filed in the Wisconsin circuit court and that a delinquency petition existed that spelled out the probable cause that the government had before acting. Therefore, the court had jurisdiction over his person. The issue is therefore decided in the same way our appellate courts have decided *Jermaine T.J.* and *Smith.* In all three cases, there was a formal document filed with the court, and in all three cases, the defendant had notice of the invocation of the court's jurisdiction and the grounds for such invocation before

the court took the action complained of by the defendant. *Jermaine T.J.* and *Smith* control here.

¶ 29. The second issue regards the 502–day delay. Again, we point out that the State did not really defend this delay in its response to the petition, and based on the meager information before us at the time, we believed there was substantial merit to this issue. Now that we have the full record, we are convinced otherwise. As Aufderhaar admits, only an intentional delay by the State to avoid juvenile jurisdiction would constitute a due process violation requiring dismissal. *See State v. Montgomery*, 148 Wis. 2d 593, 595, 436 N.W.2d 303 (1989). If the State deliberately attempts to delay a juvenile delinquency petition until the juvenile is older, thus making it more likely that waiver will be ordered, it is a due process violation. *See S.N. v. State*, 139 Wis. 2d 270, 277, 407 N.W.2d 562 (Ct. App. 1987). The juvenile court found that the delay was not intentional and that finding is not clearly erroneous. There is no evidence that the State was sitting on the case, waiting for Aufderhaar to turn seventeen. Had this been the case, the State would have acted when he actually turned seventeen or soon thereafter, around August 3, 2002. Instead, it is clear that the State filed its waiver petition and began pursuing Aufderhaar in earnest after the Montana authorities called on March 6, 2003, explaining that Aufderhaar was involved in sexual activity in Montana and providing a current address for Aufderhaar. Thus, it is quite apparent that Aufderhaar was himself the catalyst for the State's renewed interest in him. While the State certainly could have located Aufderhaar at the petition stage, and was negligent in not doing so, the resultant delay was probably due to a decision to leave Aufderhaar alone, not to wait until he

was older. That is the only inference that we can arrive at, and therefore, we conclude the delay was not an intentional attempt by the State to manipulate the system.

¶ 30. Finally, Aufderhaar argues that we should change the law in Wisconsin so as to allow relief from delays due to the State's negligence. In *Montgomery*, the supreme court expressly rejected the argument he raises. *See Montgomery*, 148 Wis. 2d at 595. This court has no authority to change law established by the supreme court. *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

*By the Court.*—Order affirmed.