# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2022AP959-CR

†Petition for review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

    **PLAINTIFF-RESPONDENT, †**

  **V.**

**LUIS A. RAMIREZ,**

    **DEFENDANT-APPELLANT.**

---

| | |
|---|---|
| Opinion Filed: | April 25, 2024 |
| Submitted on Briefs: | December 13, 2023 |

---

| | |
|---|---|
| JUDGES: | Kloppenburg, P.J., Blanchard, and Graham, JJ. |

---

Appellant
ATTORNEYS:          On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jennifer A. Lohr* of *Lohr Law Office, LLC*, Madison.

Respondent
ATTORNEYS:          On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah L. Burgundy*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 25, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP959-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2016CF31

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

LUIS A. RAMIREZ,

   DEFENDANT-APPELLANT.

        APPEAL from a judgment and orders of the circuit court for Columbia County:  W. ANDREW VOIGT, Judge.  *Reversed and cause remanded with directions*.

        Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

        ¶1      GRAHAM, J.  Luis Ramirez appeals his judgment of conviction and two circuit court orders denying his postconviction motions.  Ramirez's motions alleged that he was deprived of his constitutional right to a speedy trial based on the

46-month delay between the filing of charges and his trial, and that he is entitled to dismissal of the charges on that basis.

¶2      Based on the test articulated in ***Barker v. Wingo***, 407 U.S. 514 (1972), and related Wisconsin case law, we agree that Ramirez's constitutional right to a speedy trial was violated. Although Ramirez has not demonstrated significant prejudice in fact from the delay, the total delay in this case was extreme—the longest of any published Wisconsin constitutional speedy trial case decided since ***Barker***—and presumptively prejudicial. The vast majority of the delay was caused by government actors and is therefore attributable to the State. The State identifies neutral reasons for some of the delays, but it provides no explanation for other substantial portions of the delay, which may be taken as indicating a "cavalier disregard" for Ramirez's speedy trial rights. Ramirez twice asserted his right to a speedy trial and was not promptly brought to trial following his assertions. There is no evidence that Ramirez deliberately sought to delay the trial, and the circuit court's finding that Ramirez's actions during the pretrial proceedings were inconsistent with a desire for prompt resolution of the matter is clearly erroneous. Accordingly, we reverse the judgment of conviction and the orders denying Ramirez's postconviction motions, and remand for the circuit court to dismiss the complaint.

## BACKGROUND

¶3      In February 2016, Ramirez was charged with one count of battery by a prisoner and one count of disorderly conduct, both with repeater and use-of-a-dangerous weapon enhancers.[1] These charges stemmed from Ramirez's May 2015

---

[1] *See* WIS. STAT. §§ 940.20(1), 947.01(1), 939.62(1), 939.63(1)(b) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

assault of a prison guard at a state correctional institution where he was serving a 40-year sentence for a 1997 armed robbery conviction. Ramirez was finally tried in December 2019, 46 months after the charges were filed, and a jury convicted him on both counts.

¶4 In the discussion section of this opinion, we divide this 46-month total delay into eight periods and provide additional details about relevant events that transpired in each period. For now, it suffices to say that we identify the following periods:

(1) the 17 days that elapsed between the filing of the complaint on February 1, 2016, and the first scheduled preliminary hearing on February 18, 2016;

(2) the approximately five and one-half months that elapsed between the adjournment of that first scheduled preliminary hearing and the preliminary hearing that eventually occurred on August 4, 2016;

(3) the approximately eight months that elapsed between the August 2016 preliminary hearing and the first scheduled trial date on April 13, 2017;

(4) the almost six months that elapsed between that first scheduled trial date, which the State asked to adjourn due to the unavailability of a witness and its need for more trial days, and the second scheduled trial date on September 26, 2017;

(5) the approximately six months that elapsed between that second scheduled trial date, which the State asked to adjourn because the prosecutor and courtroom were double booked, and the third scheduled trial date on April 4, 2018;

(6) the almost six months that elapsed between that third scheduled trial date, which Ramirez's defense counsel asked to adjourn to allow him time to evaluate Ramirez's mental health records, and Ramirez's initial speedy trial demand on September 26, 2018;

(7) the approximately six months that elapsed between that speedy trial demand and the fourth scheduled trial date on April 3, 2019; and

(8) the eight months that elapsed between that fourth scheduled trial date, which the State asked to adjourn due to the retirement of the district attorney and the appointment of a new prosecutor, and the trial that ultimately commenced on December 3, 2019.

¶5 As stated, Ramirez made an initial demand for a speedy trial on September 26, 2018, well into the 46-month total delay. He made this initial demand in a pro se letter to the circuit court, in which he also raised the issue of prison surveillance footage that Ramirez asserted the State was withholding. Ramirez wrote: "I would also like this court to order the [district attorney] to give us the other 3 videos from the bay room for [the date of the incident]. They are withholding evidence that will prove I am not guilty of this crime." Ramirez asserted his right to a speedy trial a second time, on April 15, 2019, by filing a pro se motion to dismiss the charges on the ground that he had been deprived of his "constitutional right to a speedy trial" and his "14th Amendment right to due process." In both the September 2018 and April 2019 filings, Ramirez, who was represented by counsel, stated that he had been forced to file the demand and motion pro se because counsel declined to do so on Ramirez's behalf, despite his requests.

¶6 The circuit court held a hearing on the motion to dismiss on June 17, 2019, during what we have categorized as the eighth and final period of delay.

4

During the hearing, Ramirez's defense counsel and the circuit court both construed Ramirez's motion as asserting a *statutory* violation of his speedy trial right, rather than a *constitutional* violation of the right. *See* WIS. STAT. § 971.10(2), (4) (providing that, upon the defendant's speedy trial demand, the trial should occur within 90 days, and that the remedy for a violation is an order requiring the defendant to be released from pretrial custody). Defense counsel explained that he had declined to file a motion on Ramirez's behalf because counsel did not "see any remedy [for a speedy trial violation] under the circumstances"—as counsel explained, Ramirez was incarcerated for a different crime and could not be released from pretrial custody, which is the sole remedy for violations of the statutory speedy trial right. The court agreed with counsel's assessment, and denied Ramirez's motion on that ground. Defense counsel and the court both appeared to overlook the fact that Ramirez could nonetheless demand a speedy trial, even if the statutory remedy for a speedy trial violation was unavailable to him, and that the remedy for a violation of the constitutional speedy trial right—dismissal of the charges—was potentially available. *See State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324 (explaining the contrasting remedies available for statutory and constitutional speedy trial violations).

¶7 The two-day jury trial eventually occurred on December 3 and 4, 2019, and Ramirez was convicted on both counts. The circuit court sentenced him to 12 years of initial confinement and three years of extended supervision on each count, to be served concurrently with each other and consecutively to the 40-year sentence Ramirez is serving for his 1997 armed robbery conviction.

¶8 Ramirez filed a postconviction motion, which alleged that his constitutional right to a speedy trial had been violated by the 46-month delay between the filing of the criminal complaint and his trial. At an evidentiary hearing

on the motion, Ramirez testified that, among other things, he had been placed in a more restrictive form of housing while he waited for his trial and he had been told by prison guards that he would remain in restrictive housing until the trial. He also testified that he did not have access to services or programs during the time that he was in restrictive housing and that he experienced stress, anxiety, and panic as a result.

¶9     The parties agreed that the applicable standard is the four-factor test from *Barker*, 407 U.S. 514, which considers the total length of the delay; the reasons for that delay; the defendant's assertion of the speedy trial right; and prejudice to the defendant. After considering these factors, the circuit court denied Ramirez's postconviction motion in an oral ruling.

¶10     Regarding the length and reasons for the delay, the circuit court acknowledged that there had been "[a] more than necessary period of delay" that was caused by a "collection of issues" related to personnel changes in the district attorney's office and the unavailability of courtroom facilities in which to conduct the trial, and that the "more than necessary period of delay" was "chargeable to the State." Specifically, the court found that the trial had been postponed for reasons including the former district attorney's retirement; the reassignment of this case to a new prosecutor; the fact that courthouse operations moved "to a temporary location and back" at least twice; and the difficulty of scheduling trials for "a three[-]judge courthouse with only one courtroom that could accommodate a jury trial for almost a full year during this time." However, the court also found that another unspecified portion of the delay was caused by Ramirez's requests for the prison surveillance footage that allegedly depicted the assault. Specifically, the court found, "at least some portion of the delay … was due to [Ramirez] himself" and "his insistence that additional video evidence of this incident existed and was

6

available and had not been disclosed by the State." Based on the prosecutor's repeated representations that there was no surveillance footage of the incident, the court described the surveillance footage that Ramirez sought as "mythical" and "nonexistent."

¶11 Relatedly, the circuit court determined that Ramirez's assertions of the right to a speedy trial "did not weigh as heavily in his favor as [they] might otherwise" based on his discovery requests for the prison surveillance footage and other comments that Ramirez made at the June 17, 2019 hearing about potentially seeking a venue change. The court found that Ramirez's discovery requests and comments about a venue change "were patently inconsistent with anyone whose only goal is to get to trial as quickly as possible." In other words, the court determined that, despite asserting his right to a speedy trial, Ramirez was "sometimes overtly" and other times "more subtly working against his own stated interest in getting to that trial date."

¶12 Finally, regarding prejudice to Ramirez, the circuit court found "facially incredible" the testimony concerning "the harms [Ramirez] claimed to have suffered simply because this case was open." More specifically, the court found that Ramirez's "history of disciplinary problems and other issues within the prison system" were "equally likely" to explain his placement in restricted housing and his restricted access to programming and services.

¶13 Ramirez appealed. Then, prior to the submission of appellate briefing, Ramirez asked this court to remand the matter to the circuit court so that he could supplement the record with additional evidence about the status of the prison surveillance footage that had come to appellate counsel's attention. Ramirez asserted that the evidence showed that the surveillance footage had in fact existed,

despite the prosecutor's assertions to the contrary, and that the existence of the surveillance footage called into question the circuit court's factual findings and legal conclusions. We granted Ramirez's motion for a remand, while retaining jurisdiction over the appeal.

¶14 On remand, Ramirez supplemented the record with written reports by law enforcement that indicated that there had been surveillance footage of the incident, which was never provided to Ramirez in discovery. The reports stated that the detective who had investigated the incident had obtained a DVD copy of the surveillance footage from the correctional institution, that he returned the DVD to the institution because he had been unable to play it, but that he had ultimately been able to review the surveillance footage at the institution.

¶15 Ramirez filed a supplemental postconviction motion asking the circuit court to reconsider its original ruling and rationale on the alleged constitutional speedy trial violation.[2] The court denied the motion. It acknowledged that, in light of the new information that had been provided, the court's prior descriptions of the prison surveillance footage as "mythical" and "nonexistent" were "somewhat overstated." However, the court determined that the new information did not change its legal analysis. According to the court, "there ha[d] been repeated efforts over a period of years to obtain the video," and "every time we got close to some significant event," Ramirez "again raised this issue." As we understand it, the court's rationale was that, regardless of whether the surveillance footage ever existed, Ramirez's demands for that footage before trial and the timing of those

---

[2] Ramirez does not characterize the failure of the prosecution to produce the surveillance footage as a **Brady** violation that would entitle him to postconviction relief. *See **Brady v. Maryland**, 373 U.S. 83, 87 (1963). Nor does he characterize it as a failure to preserve exculpatory evidence in violation of his right to due process. *See **Arizona v. Youngblood**, 488 U.S. 51, 57-58 (1988). Accordingly, we do not address those potential issues.

demands, coupled with his statements suggesting that he wanted his attorney to file a motion for a change of venue, were inconsistent with his demand for a speedy trial.

¶16    The circuit court issued a written decision following the remand, the record was supplemented and transmitted to this court, and the parties submitted their appellate briefs.[3]

## DISCUSSION

¶17    The Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution both guarantee an accused the right to a speedy trial. *Urdahl*, 286 Wis. 2d 476, ¶11. The constitutional right to a speedy trial has "its roots at the very foundation of our English law heritage" and is "as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. State of N.C.*, 386 U.S. 213, 223 (1967). "Whether this right has been violated is a question of law that we review independently" from the circuit court, accepting as true all of the court's factual findings unless they are clearly erroneous. *State v. Provost*, 2020 WI App 21, ¶25, 392 Wis. 2d 262, 944 N.W.2d 23; *Urdahl*, 286 Wis. 2d 476, ¶10.

¶18    To assess whether a defendant's constitutional right to a speedy trial has been violated, we apply the four-part balancing test articulated in *Barker*, 407

---

[3] In its response brief, the State contends that we should not review the circuit court order that denied Ramirez's supplemental postconviction motion because, among other things, Ramirez did not file a statement identifying his objections to the court's decision after the record was returned to the clerk of this court. *See* WIS. STAT. § 808.075(8). Although Ramirez did not file the statement of objections that is contemplated by § 808.075(8), the State does not argue that the statement of objections is a jurisdictional prerequisite to appellate review. We retained jurisdiction of the appeal during the remand, and the parties' appellate briefing was submitted after the record was returned to this court. Under the circumstances, we elect to consider the merits of the parties' arguments.

U.S. 514. As noted, that test considers: (1) the total length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the speedy trial rights; and (4) the prejudice to the defendant as a result of the delay. *See Day v. State*, 61 Wis. 2d 236, 244, 212 N.W.2d 489 (1973). "[N]one of the four factors is either a necessary or sufficient condition." *Hadley v. State*, 66 Wis. 2d 350, 363, 225 N.W.2d 461 (1975). Instead, we balance these factors in light of the relevant circumstances of the case. *See Urdahl*, 286 Wis. 2d 476, ¶11 ("Essentially, the test weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done speedily."); *id.*, ¶37. If, under the totality of the circumstances, the defendant was denied the constitutional right to a speedy trial, the criminal charges must be dismissed to remedy the violation. *Id.*, ¶11 (citing *Barker*, 407 U.S. at 522); *see also Hadley*, 66 Wis. 2d at 364, 365, 367 ("the failure to grant a speedy trial is a blot upon a system of justice," and its denial therefore "leads to the severe remedy of dismissal of the indictment").

¶19 Ramirez asserts that application of the *Barker* factors to the facts of this case demonstrates that he was denied the right to a speedy trial, and that his conviction should be reversed and the charges dismissed on that basis. For reasons we now explain, we agree.

## I. Total Length of the Delay

¶20 The first *Barker* factor, the total length of the delay, serves "two roles." *Urdahl*, 286 Wis. 2d 476, ¶12. Initially, it functions as "a triggering mechanism used to determine whether the [total] delay is presumptively prejudicial," thereby warranting further examination of the defendant's claim. *See id.*; *see also State v. Borhegyi*, 222 Wis. 2d 506, 510, 588 N.W.2d 89 (Ct. App.

1998) (if the total delay is not presumptively prejudicial, it is unnecessary to inquire into the other ***Barker*** factors).

¶21    Here, 46 months passed between the filing of the complaint and Ramirez's trial, and the parties agree that, for purposes of the first ***Barker*** factor, the total delay was 46 months.[4]  The State concedes that a delay of this length is presumptively prejudicial.  *See **Urdahl***, 286 Wis. 2d 476, ¶12 ("Generally, a post-accusation delay approaching one year is considered to be presumptively prejudicial.").

¶22    If the total length of the delay is presumptively prejudicial, it then functions as a factor in the balancing test.  *See **id.***  "As one of the four factors in the balancing test," we consider "'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'"  ***Id.*** (citation omitted).  The total length of the delay "is significant to the speedy trial analysis because … the presumption that pretrial delay has prejudiced the accused intensifies over time."  ***Id.*** (citation omitted).

¶23    Here, we observe that the total delay of 46 months is nearly four times as long as "the bare minimum needed to trigger judicial examination of the claim." *See **id.*** (citation omitted) (noting that delays of more than one year are "presumptively prejudicial").  It is far longer than the total delays of 17, 18, and 25 months in the three published Wisconsin cases that concluded the defendant's

---

[4] In some cases, delays by the prosecution in filing a criminal complaint may be included in calculating the total delay for purposes of determining whether a defendant's constitutional speedy trial rights have been violated.  *See, e.g.*, ***State v. Borhegyi***, 222 Wis. 2d 506, 510-11, 588 N.W.2d 89 (Ct. App. 1998).  Here, Ramirez does not argue that any delay in filing the complaint should be included in the calculation of the total delay, and we discuss the issue no further.

speedy trial rights were violated.[5] Indeed, the 46-month delay in this case is the longest total delay reflected in any published constitutional speedy trial case from Wisconsin that has been issued since the United States Supreme Court decided *Barker*, 407 US. 514.[6] We conclude that the total length of the delay in this case was extreme, and that the first *Barker* factor weighs heavily against the State.

## II. Reasons for the Delay

¶24    In contrast to the first *Barker* factor, which considers the total length of the delay regardless of its causes, the second *Barker* factor considers the reasons that the parties advance for the delay. For purposes of this factor, the pertinent questions are whether the delay was caused by government actors including but not

---

[5] *See Borhegyi*, 222 Wis. 2d at 512 (17-month delay violated defendant's constitutional speedy trial rights); *Hadley v. State*, 66 Wis. 2d 350, 363, 225 N.W.2d 461 (1975) (delay of almost 18 months was so excessive that it leads prima facie to the inquiry of whether there was a denial of constitutional speedy trial rights); *State v. Ziegenhagen*, 73 Wis. 2d 656, 666, 245 N.W.2d 656 (1976) (25-month delay violated defendant's constitutional speedy trial rights); *see also Green v. State*, 75 Wis. 2d 631, 638, 250 N.W.2d 305 (1977) (describing a 12-month delay as bordering on denial of constitutional speedy trial rights).

[6] *See Day v. State*, 61 Wis. 2d 236, 212 N.W.2d 489 (1973) (7-month delay); *Beckett v. State*, 73 Wis. 2d 345, 243 N.W.2d 472 (1976) (over 8-month delay); *Green*, 75 Wis. 2d 631 (12-month delay); *State v. Shears*, 68 Wis. 2d 217, 229 N.W.2d 103 (1975) (6-month delay and a little over 1-year delay, respectively); *Scarbrough v. State*, 76 Wis. 2d 87, 250 N.W.2d 354 (1977) (15-month delay); *Watson v. State*, 64 Wis. 2d 264, 219 N.W.2d 398 (1974) (17-month delay); *Borhegyi*, 222 Wis. 2d 506 (17-month delay); *Hadley*, 66 Wis. 2d 350 (18-month delay); *Hatcher v. State*, 83 Wis. 2d 559, 266 N.W.2d 320 (1978) (20-month delay); *Norwood v. State*, 74 Wis. 2d 343, 246 N.W.2d 801 (1976) (22-month delay); *Ziegenhagen*, 73 Wis. 2d 656 (24-month delay); *State v. Leighton*, 2000 WI App 156, 237 Wis. 2d 709, 616 N.W.2d 126 (2000) (26-month delay); *Hipp v. State*, 75 Wis. 2d 621, 250 N.W.2d 299 (1977) (30-month delay); *State v. Urdahl*, 2005 WI App 191, 286 Wis. 2d 476, 704 N.W.2d 324 (32 1/2-month delay); *State v. Provost*, 2020 WI App 21, 392 Wis. 2d 262, 944 N.W.2d 23 (34-month delay); *State v. Williams*, 2004 WI App 56, 270 Wis. 2d 761, 677 N.W.2d 691 (35-month delay); *State v. Lemay*, 155 Wis. 2d 202, 455 N.W.2d 233 (1990) (37-month delay).

The total delay in this case is just shy of the five-year delay in *Barker v. Wingo*, 407 U.S. 514, 534-36 (1972). There, the Court determined that the lengthy delay did not violate the defendant's speedy trial rights because the defendant made a strategic choice to acquiesce to periods of delay until his alleged co-conspirator had already been tried. *Id.*

limited to the prosecution, and the extent to which the circumstances surrounding those delays weigh against the State. *State v. Ziegenhagen*, 73 Wis. 2d 656, 666-67, 245 N.W.2d 656 (1976); *see also Urdahl*, 286 Wis. 2d 476, ¶11. It is the State's burden to advance a reason for the delay—if it does not, the delay will be attributed to the State, and its silence on the topic is weighed heavily against the State. *Borhegyi*, 222 Wis. 2d at 513.

¶25 We begin by considering the causes of the delay in this case and, in so doing, we identify any periods of delay that "can be attributed to the [S]tate." *Norwood v. State*, 74 Wis. 2d 343, 354, 246 N.W.2d 801 (1976). A period of delay will be attributed to the State if it was caused by government actors, including but not limited to members of the prosecution team, employees in the clerk's office, or elements of the court system itself. *Ziegenhagen*, 73 Wis. 2d at 666-67 ("the government as an institution is charged with the duty of assuring a defendant a speedy trial"); *see also Norwood*, 74 Wis. 2d at 354. Other periods of delay are not attributed to the State for purposes of the second *Barker* factor. *Urdahl*, 286 Wis. 2d 476, ¶26. Periods of delay that were caused by the defendant are not attributed to the State. *Id.*; *see also Provost*, 392 Wis. 2d 262, ¶39 (stating, as a general matter, that "delays caused by defense counsel are properly attributed to the defendant" (citation omitted)). Nor is the time "required for the orderly administration of criminal justice," including the time encompassed by the initial appearance, preliminary hearing, arraignment, the setting of the trial date, and the hearing and disposition of pretrial motions, whether made by the prosecution or defense—provided that they occur expeditiously and without delay. *Scarbrough v. State*, 76 Wis. 2d 87, 101, 250 N.W.2d 354 (1977) (citation omitted); *Norwood*, 74 Wis. 2d at 354.

13

¶26 After identifying any periods of delay that were caused by government actors and are therefore attributable to the State, we determine the extent to which the causes of delay should be weighed against the State. *Borhegyi*, 222 Wis. 2d at 512. Periods of delay may weigh heavily against the State, or they may be given less weight, or sometimes none at all, depending on the reasons the State advances for the delay. A "deliberate attempt [by government actors] to delay the trial in order to hamper the defense" will be "weighed heavily against the [State]," as will a "cavalier disregard toward a defendant's speedy trial rights." *Id.* at 512-13 (citation omitted). By contrast, "more neutral" reasons, such as mere "negligence" by government actors or "overcrowded courts," are weighed against the State, albeit "less heavily." *Id.* at 506 (citing *Barker*, 407 U.S. at 531).

¶27 Finally, delays that are attributed to the State but caused by what courts have referred to as "valid" reasons are given no weight at all. *Scarbrough*, 76 Wis. 2d at 95-96 (citing *Barker*, 407 U.S. at 531). In this context, a delay is caused by a "valid" reason if it is "caused by something intrinsic to the case itself," such as "the inability of the State to produce a necessary witness," *Hadley*, 66 Wis. 2d at 362, or "a defendant's incompetency to stand trial," *Norwood*, 74 Wis. 2d at 356. As it has been used in the case law, the phrase "intrinsic to the case" has referred to a person who is a necessary participant at the trial and who cannot be replaced. When such a person is absent and cannot be compelled to appear at the trial, their absence provides a "valid" reason for the delay. *See Hadley*, 66 Wis. 2d at 362 (stating that a judge is not "intrinsic to the case" because any case "can be tried by any judge assigned by this court," in contrast to a "missing witness or an ill witness," who "cannot be supplied by the fiat of this court").

¶28 Here, the circuit court found that some portion of the 46-month delay was caused by Ramirez's requests for the prison surveillance footage of the charged

incident, and that other portions were caused by a variety of reasons that are attributable to the State. Apart from those generalized findings, however, the court did not explicitly separate out any specific time periods or identify the reasons for the delay in any such period.

¶29 In the absence of particularized findings by the circuit court, we consider the record in its entirety. Based on the undisputed record facts, we divide the total delay into the eight periods we have referenced above; we determine the cause or causes for the delay in each period and whether that period should be attributed to the State; and, to the extent that we attribute any periods of delay to the State, we determine the extent to which the period weighs against the State.[7] We then consider the circuit court's finding that Ramirez's discovery demands were responsible for a portion of the delay and conclude that the court's finding is clearly erroneous. As we explain, we ultimately conclude that the vast majority of the 46 months should be attributed to and weighed against the State—either because government actors caused the delay for reasons that were not "intrinsic to the case itself," or because the State fails to offer a reason for the delay that is supported by the record.

---

[7] In its appellate brief, the State divides the 46 months at issue here into four periods. We do not adopt that framework and instead divide the total delay into eight periods. We do so because, in our assessment, the State's division of the delay into four periods lumps together periods of delay the State attempts to explain with other periods that the State fails to explain.

Separately, it appears that some scheduling events took place during circuit court proceedings that are not memorialized in the appellate record. We have reviewed the circuit court's electronic docket, sometimes referred to as "CCAP," which "provides public access online to reports of activity in Wisconsin circuit courts." *State v. Bonds*, 2006 WI 83, ¶6, 292 Wis. 2d 344, 717 N.W.2d 133. Like the parties on appeal, we have used entries in CCAP to fill in certain gaps in the appellate record about when scheduling events occurred.

## A. First Period (February 1 – 18, 2016)

¶30 The first period we consider consists of the 17 days that elapsed between the filing of the complaint on February 1, 2016, and the first scheduled preliminary hearing. During this time, Ramirez made an initial court appearance on February 11. The circuit court scheduled the preliminary hearing for February 18, Ramirez appeared at the scheduled hearing without counsel, and the court set the hearing over to the following month to allow time for Ramirez to obtain counsel. We conclude that this 17-day period encompassed the time necessarily required for "the orderly administration of criminal justice," and is not attributable to the State. *Scarbrough*, 76 Wis. 2d at 10; *see also* ***Norwood***, 74 Wis. 2d at 354.

## B. Second Period (February 18, 2016 – August 4, 2016)

¶31 The second period encompasses the 168 days (approximately five and one-half months) that elapsed between the first adjournment of the preliminary hearing and August 4, 2016, the date the preliminary hearing was finally held. In contrast to the first period, we attribute this period of delay to the State. However, for reasons we now explain, and based on a significant assumption in the State's favor, we conclude that the delay in this period should not be weighed against the State at all.

¶32 During this period, Ramirez appeared at the preliminary hearing that had been rescheduled for March 3, 2016, again without counsel. Ramirez had requested the appointment of counsel from the public defender's office, but counsel had not yet been appointed. The circuit court gave Ramirez the choice of proceeding without counsel or waiving the statutory time limits for the preliminary hearing. Ramirez elected to waive the time limits, and the court again rescheduled the hearing for May 10.

¶33    Defense counsel was appointed on March 15, 2016, and promptly served discovery requests on the prosecution. Shortly before the scheduled May 10 preliminary hearing, defense counsel requested a continuance because the prosecutor had not yet responded to the discovery requests. The circuit court again rescheduled the preliminary hearing, this time for July 20.

¶34    Then, on July 5, 2016, a different attorney was appointed to represent Ramirez.[8] Ramirez and his new counsel appeared at the preliminary hearing on July 20, and counsel asked the circuit court to reset the hearing due to his recent appointment. The court rescheduled the preliminary hearing for August 4, and it finally took place on that date.

¶35    The State argues that the entirety of this period "involved delays due to the ordinary demands of the judicial system." We disagree—168 days elapsed due to continuances of the preliminary hearing, during which all circuit court activity appears to have ceased. *See **Ziegenhagen***, 73 Wis. 2d at 666 (periods of inactivity are attributed to the State); *cf. **Scarbrough***, 76 Wis. 2d at 101 (periods of expeditious activities "required for the orderly administration of criminal justice" are not attributed to the State); ***Norwood***, 74 Wis. 2d at 354 (same).

¶36    As for the specific causes of the delay, the State appears to acknowledge that government actors were responsible for the initial delay in appointing counsel to Ramirez, and that the initial period of delay should therefore be attributed to the State. Yet, the State argues that this initial period of delay should not be weighed against it because the time it takes to appoint counsel constitutes a "valid" reason for delay. The State does not cite authority to support the proposition

---

[8] The record does not reveal the reason why substitute counsel was appointed, but the parties agree that there is nothing in the record to suggest that Ramirez requested the substitution.

that delays in appointing counsel are given no weight in a speedy trial analysis. And we have concerns about such a proposition in a case like this. We are aware of statewide shortages of attorneys who are willing to take public defender appointments, and that some defendants wait far longer to receive appointments than Ramirez did here. Yet it is nonetheless the responsibility of government actors to appoint counsel for indigent defendants, while at the same time safeguarding their speedy trial and other constitutional rights.[9] However, Ramirez does not reply to the State's argument on this point and based on that implied concession we assume without deciding that delays in appointing counsel are given no weight against the State in a speedy trial analysis. *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (an appellant's failure to reply to respondent's argument may be deemed an implied concession).

¶37 As for the days of delay within this period that were caused by defense counsel's requests for continuances, an argument could be made that these days

---

[9] *See* **Gideon v. Wainwright**, 372 U.S. 335 (1963) (the United States Constitution guarantees indigent criminal defendants the right to appointed counsel and that the duty to provide it falls upon the State); **Carpenter v. County of Dane**, 9 Wis. 274 (1859) (the Wisconsin Constitution guarantees indigent criminal defendants the right to counsel); **State v. Lehman**, 137 Wis. 2d 65, 76-77, 403 N.W.2d 438 (1987) (in creating the office of the state public defender, the legislature "intended to structure a comprehensive state-wide program" to deal with its constitutional obligation to appoint counsel to indigent defendants); **State ex rel. Chiarkas v. Skow**, 160 Wis. 2d 123, 138-39 & n.8, 465 N.W.2d 625 (1991) (circuit courts should determine whether criminal defendants who do not meet the criteria for appointment of counsel through the public defender's office are indigent, and if so, should appoint counsel from the private bar).

We recognize the extensive efforts that various government actors, including circuit court judges, regularly undertake in the face of inadequate attorney resources to represent indigent criminal defendants. Yet, we question how the constitutional guarantee of a speedy trial could lose its force because government officials responsible for ensuring adequate resources fail to provide them. As discussed below, Wisconsin cases recognize that periods of delay caused by inadequate government resources and a "fiscal inability to deal speedily with the problems that are presented by modern society" are attributed to the State. **Hadley**, 66 Wis. 2d at 368-69; *see also* **Green**, 75 Wis. 2d at 636-37 (delay due to an overburdened court system weighs against the State, even if not "heavily").

should not be attributed to the State. *See Provost*, 392 Wis. 2d 262, ¶39. Yet, the State does not make this argument. It instead contends that defense counsel's requests for continuances should not be weighed against the State. We accept the State's position on this point.

## C. Third Period (August 4, 2016 – April 13, 2017)

¶38    The third period we consider encompasses the 252 days (more than eight months) between the preliminary hearing on August 4, 2016, and the first scheduled trial date on April 13, 2017. As we now explain, we conclude that the first 83 days in this period are not attributable to the State, and that the remaining 169 days are attributable to the State and weigh heavily against it because the State fails to advance any reason for the delay.

¶39    At the August 4, 2016 preliminary hearing, the circuit court bound the matter over for trial and scheduled Ramirez's arraignment for October 26, after defense counsel requested that the arraignment be "set at a later time" to allow counsel to pursue possible motions. Ramirez was arraigned on October 26, and then, at a scheduling conference in December, the court scheduled a one-day jury trial for April 13, 2017.

¶40    Once again, the State does not expressly argue that Ramirez is responsible for the 83 days that elapsed between the August 4 preliminary hearing and the October 26 arraignment, even though that delay was caused by defense counsel's request to reschedule the arraignment. The State instead contends that counsel's request provided a "valid" reason for the delay, and that the 83 days of delay should not be weighed against the State. We agree, and do not weigh these 83 days against the State.

¶41 However, the State offers no explanation for the remaining 169 days (that is, nearly six months) in this period, during which, apart from the circuit court scheduling the first trial date, all court activity in this case appears to have ceased. We therefore attribute 169 days of delay to the State. *See **Borhegyi***, 222 Wis. 2d at 513 (unexplained delays are attributed to the State). Further, based on the premise that the State's failure to offer an explanation for substantial delays may be taken as indicating a "cavalier disregard" for a defendant's speedy trial rights, ***id.***, we weigh these 169 days heavily against the State.

### D. Fourth Period (April 13, 2017 – September 26, 2017)

¶42 The fourth period encompasses the 166 days (nearly six months) between the first scheduled trial date on April 13, 2017, and the second scheduled trial date on September 26, 2017. As we now explain, we conclude that this period is attributable to and weighs against the State.

¶43 Shortly before the April 17 trial date, the prosecutor asked the circuit court to reschedule the trial because a "necessary witness" was "unavailable on that date." Before the court could rule on this request, the prosecutor filed a second request to set over the trial date, in which the prosecutor stated that, in addition to its witness's unavailability, the prosecutor had concluded that the parties would need three days, as opposed to just one, to try the case. In both requests, the prosecutor indicated that defense counsel did not object to an adjournment. The court granted the prosecutor's requests, rescheduling the trial to commence on September 26.

¶44 The State appears to acknowledge that it was responsible for this period of delay. However, it contends that there were valid reasons for the delay and that the entirety of this period should be given no weight. ***Scarbrough***, 76 Wis.

2d at 95-96 (delays caused by "valid" reasons are given no weight). For reasons we now explain, we disagree.

¶45     First, as we have explained, a delay is caused by a "valid" reason if the cause is "intrinsic to the case itself" and we question the premise that the prosecutor's requests for an adjournment were based on reasons "intrinsic to the case." Here, the prosecutor requested that the trial be rescheduled for two independent reasons—the witness's unavailability and the prosecutor's reassessment of the number of days needed for trial. The State cites authority to support the proposition that a witness's unavailability may constitute a "valid" reason for delay, ***Urdahl***, 286 Wis. 2d 476, ¶26, but it cites no authority suggesting that a prosecutor's reassessment of the number of days needed to try the case constitutes a "valid" reason for delay.

¶46     Further to this point, the State does not persuade us that the record in this case demonstrates the witness's unavailability was a "valid" reason for delay. The case law establishes that a necessary witness is "intrinsic to the case," and the unavailability of an ill or missing witness who is necessary and cannot be compelled by court process to appear at trial provides a "valid" reason for delay that is not weighed against the State. ***Hadley***, 669 Wis. 2d at 362. Here, however, the State does not direct us to information in the record that explains why the witness was unavailable. Without such an explanation by the State, we cannot assess whether the circumstances surrounding the witness's unavailability constitute a "valid" reason for delay.

¶47     Accordingly, we conclude that the prosecutor's reasons for requesting the adjournment were not "valid." They instead constitute "neutral reasons" that should be weighed against the State, albeit less heavily than a deliberate attempt by

the prosecution to hamper the defense or a cavalier disregard for the defendant's speedy trial rights. *See* **Borhegyi**, 222 Wis. 2d at 512 (citing **Barker**, 407 U.S. at 531).

¶48 Second, we are not persuaded that the prosecutor's neutral reasons for requesting an adjournment fully account for the entirety of the delay in this period. As Ramirez points out, the State does not explain why the circuit court adjourned the trial for more than five months—a significant period in and of itself—and why the trial could not have been more promptly rescheduled. It is the State's responsibility to offer an explanation for the delay in rescheduling the trial, and it does not offer one here. *See* **id.** at 513 (considering the State's complete failure to explain certain periods of delay, as well as its failure to explain why trial dates were not more promptly rescheduled following periods of explained delay).

¶49 Accordingly, we conclude that at least some portion of this period is unexplained and weighs heavily against the State. In so doing, we acknowledge the likelihood that at least some of this added delay in rescheduling the trial was due to an overcrowded circuit court docket, as well as an inadequacy of judicial resources and courthouse facilities. We recognize the considerable challenges that circuit court judges and their staff face in scheduling hearings and trials in competing matters, and further recognize that, even with the most diligent staff and most efficient caseload management systems in place, it may not be possible to schedule hearings and trials as promptly as judges and court staff would like. Even so, when a defendant alleges a constitutional speedy trial violation, the burden is on the State to create a record of the specific causes of any delays in scheduling, which the State did not do here. **Id.**

¶50 We further observe that, even if the State had developed a record regarding the specific causes of the delay in rescheduling the trial and the record indicated that the delay was caused by inadequate "resources of the system of court administration," the delay would still be attributed to and weighed against the State. *Hadley*, 66 Wis. 2d at 362-63. As our supreme court observed almost 50 years ago, "the court system itself has great responsibility to see to it that what resources it has operate as efficiently and as justly as possible." *Id.* at 369. Nevertheless, "constitutional liberties will only be preserved if" other branches of government place at the judicial branch's disposal "adequate resources to meet the challenges that are daily apparent in our courts." *Id.* When circuit courts are not adequately funded by other branches of state and local government and constitutional violations result from the lack of adequate funding, the remedy will sometimes be the dismissal of criminal charges on constitutional grounds. *Id.* at 367-68; *Dickey v. Florida*, 398 U.S. 30, 52 n.18 (1970) (Brennan, J., concurring) ("The case on trial is entitled to deliberate consideration[,]" but at the same time, the other cases on a court's calendar "stack up…. If the legislature were to refuse to install sufficient judicial machinery to perform the judicial tasks, it might be necessary to turn some accused persons loose." (quoting *King v. United States*, 265 F.2d 567, 569 (D.C. Cir. 1959))).

### E. Fifth Period (September 26, 2017 – April 4, 2018)

¶51 The fifth period encompasses the 190 days (more than six months) between the second scheduled trial date, which was scheduled to commence on September 26, 2017, and the third scheduled trial date of April 4, 2018. This period is attributable to and weighs against the State.

¶52 Shortly before the September 2017 trial date, the prosecutor who was assigned to this case alerted the circuit court that there was a scheduling conflict involving another case, which was set to be tried by the same prosecutor in the same courtroom on the same date. At the time, the county courthouse was undergoing renovations and only one courtroom was available for jury trials. The court granted the prosecutor's request and rescheduled Ramirez's trial to commence in April 2018.

¶53 The State contends that it is not responsible for this period of delay because the circuit court had "mistakenly scheduled two trials in the sole courtroom it had available." This argument misses the mark. As we have summarized above, "the government as an institution is charged with the duty of assuring a defendant's speedy trial," and "[i]t is irrelevant whether the delay occurred in the clerk's office, the prosecutor's office, or the judiciary." *Ziegenhagen*, 73 Wis. 2d at 666-67. Delays caused by any of these government actors are attributable to the State, even if the delay is caused by a mistake that in no way represents an intentional effort to delay. *See id.* at 667 (attributing delay caused by a mistake in the clerk's office to the State). Therefore we attribute the entirety of this 190-day delay to the State.

¶54 The State also appears to argue that, even if government actors were responsible for the delay, the scheduling conflict provided a "valid" reason for the adjournment and the delay should not be given any weight against the State. We disagree. The State's explanation may constitute a "neutral" reason for the delay, but not a "valid" one as that term is used in the case law because it is not based on something "intrinsic to the case." *See Borhegyi*, 222 Wis. 2d at 512 (prosecutor's negligence and overcrowded courts are neutral reasons for delay (citing *Barker*, 407 U.S. at 531)); *Hadley*, 66 Wis. 2d at 363 (citing *Barker*, 407 U.S. at 531, for the proposition that, "where the delay is the result of overcrowded courts or judicial

manpower, … 'such circumstances must rest with the government rather than with the defendant'"); ***Ziegenhagen***, 73 Wis. 2d at 667 (although "delay occasioned by negligence is not to be weighed as heavily against the government as an intentional effort to hamper the defense, the responsibility must nevertheless rest with the State").

¶55    Finally regarding this period, Ramirez again argues that the State fails to explain why the trial could not be scheduled more promptly than six months later. We agree and conclude that at least some portion of the delay in this period is unexplained, and therefore weighs more heavily against the State. *See **Borhegyi***, 222 Wis. 2d at 513.

### F.  Sixth Period (April 4, 2018 – September 26, 2018)

¶56    The sixth period encompasses the 175 days (nearly six months) between the third scheduled trial date on April 4, 2018, and Ramirez's first speedy trial demand on September 26, 2018.  For reasons we now explain, we do not attribute any of this period to the State.

¶57    On March 6, 2018, less than a month before the scheduled trial, Ramirez's counsel requested a continuance.  Counsel stated that he was waiting to receive Ramirez's medical and mental health records, which were necessary to explore a potential defense of not guilty by reason of mental disease or defect.  The circuit court took the scheduled trial date off the calendar, and it did not reschedule a new trial date.  Based on references in CCAP, it appears that the circuit court held a status conference on May 21, and a scheduling conference on August 6.  The conferences were not transcribed, and no notes about what occurred during the conferences appear in the record or on CCAP.  Ramirez then filed his pro se speedy trial demand on September 26, 2018.

¶58     It is evident that at least some of this period, which was initiated by counsel's request for a continuance to evaluate Ramirez's mental health, should not be attributed to or weighed against the State. *See **Provost***, 392 Wis. 2d 262, ¶39 (as a general matter, "delays caused by defense counsel are properly attributed to the defendant"); ***Norwood***, 74 Wis. 2d at 356 ("a defendant's incompetency to stand trial" is a factor "intrinsic to the case itself"). Ramirez argues that defense counsel's request for a continuance fails to account for the entirety of this period of delay, and that some of it should be attributed to the State. Yet, Ramirez does not identify any demarcation point during this period in which the responsibility for the delay shifted to the State. Accordingly, we decline to attribute any of the delay in this period to the State.

### G. Seventh Period (September 26, 2018 – April 3, 2019)

¶59     The seventh period we consider encompasses the 189 days (more than six months) between Ramirez's speedy trial demand and the fourth scheduled trial date, which was scheduled to commence on April 3, 2019. This period was caused by government actors, is attributable to the State, and weighs heavily against it.

¶60     The demand Ramirez filed on September 26, 2018, stated: "I want a speedy trial. I've been asking for my counsel to put [in] a motion for this for months." As noted, Ramirez also demanded that the circuit court order the prosecutor to produce certain prison surveillance footage that he contended the State was withholding. It appears that the court held a telephone conference shortly after Ramirez's demand, and a note in CCAP shows that Ramirez's counsel indicated that he would meet with Ramirez on October 11, after which he would inform the court of the status of the demand. However, there is no record of any subsequent

26

update by counsel. The next recorded court activity was on December 5, when the court scheduled the fourth trial date to commence on April 3, 2019.

¶61 Apart from asserting that this period "is not chargeable to either side," the State does not offer any explanation for this period of delay. We therefore attribute all of the days in this period to the State, and weigh this period heavily against the State. *See **Borhegyi***, 222 Wis. 2d at 513 (unexplained delays are attributable to the State and may be weighed heavily against it).

### H. Eighth Period of Delay (April 3, 2019 – December 3, 2019)

¶62 The eighth and final period encompasses the 244 days (eight months) between the fourth scheduled trial date and Ramirez's trial, which took place on December 3 and 4, 2019. Again, this period is entirely attributable to the State, and the latter portion of this period weighs heavily against it.

¶63 Shortly before the April 2019 trial date, a new prosecutor was assigned to Ramirez's case, and she asked for an adjournment. In her letter to the circuit court, the new prosecutor represented that the prosecutor who had been handling the case retired, and that the new prosecutor would "not be able to prepare for this complex case given the timeframe." The prosecutor indicated that defense counsel did not object to the request for an adjournment. The court pushed back the trial date to December 3, 2019.

¶64 Then, on April 15, 2019, Ramirez filed a pro se motion to dismiss the charges on speedy trial grounds. After holding an evidentiary hearing on June 17, the circuit court denied the motion.

¶65 The State concedes that government actors were responsible for this period of delay, and that this period should be attributed to the State. However, it

contends that the prosecutor's retirement provided a "valid" reason for requesting the adjournment and that these days should be given no weight. We disagree. Although the prosecutor's retirement may constitute a neutral reason for the delay, the State provides no authority to support the proposition that the specific prosecutor was "intrinsic to the case" and that his retirement is a "valid" reason for delay. Accordingly, we conclude that this period of delay should be weighed against the State.

¶66 We further conclude that, once again, the State's reasons for requesting an adjournment do not fully account for the full eight months that passed. Ramirez again argues that the State fails to explain why the trial could not be rescheduled more promptly, and we conclude that his argument is especially salient for this period of delay, which occurred after Ramirez had twice asserted his right to a speedy trial. *See id.* at 513.

### I. Ramirez's Discovery Requests

¶67 Before summarizing our conclusions regarding the causes of the delay and the weight to assign to each period of delay that is attributable to the State, we pause to discuss the circuit court's finding that some unspecified period of the delay was caused by Ramirez's "insistence that additional video evidence of the incident existed and was available and had not been disclosed by the State," and the court's conclusion that that delay should be attributed to Ramirez.

¶68 The circuit court's factual finding is clearly erroneous. In its appellate briefing, the State does not identify any specific period of delay that was caused by Ramirez's requests for the prison surveillance footage. And, based on our own

review of the record, it does not appear that any portion of delay was caused by Ramirez's demands for the production of surveillance footage of the incident.[10]

¶69 Additionally, to the extent that Ramirez's discovery requests did in fact result in delay, the record in this case suggests that any such delay would be more properly attributed to the State. "A defendant has a due process right to any favorable evidence 'material either to guilt or to punishment' that is in the State's possession." *State v. Wayerski*, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). Delay occasioned by the State's failure to turn over discovery that existed when requested, or to offer an explanation as to why the State could not produce it, should be attributed to the State and weighed heavily against it. *See State v. Kohel*, No. 2010AP1057, unpublished slip. op. ¶10 & n.4 (WI App. Jan. 12, 2011) (concluding that delay caused by defendant's request for video evidence was attributable to the State, and, given the State's failure to offer an explanation as to why it failed to produce the video, the delay weighed heavily against the State).[11]

---

[10] Ramirez made discovery requests on March 15, 2016, and March 28, 2016, shortly after the complaint was filed. As we have discussed above, those requests were made during a period of delay which, we have concluded, should be attributed to but not weighed at all against the State. *See supra* ¶¶31-37 (addressing the second period). There are references to an exchange of letters about discovery during the sixth period, but we have explained why we attribute that period entirely to Ramirez. It is true that Ramirez also specifically demanded the surveillance footage in his September 26, 2018 pro se speedy trial demand, and his demands for the footage were discussed at the June 17, 2019 hearing on his motion to dismiss. However, based on the timeline recounted above, *supra* ¶¶59-66 (addressing the seventh and eighth periods), there is no indication in the record that these later demands resulted in any delay. As we have summarized in the text, the circuit court did not make or imply specific factual findings to the contrary; instead the court merely expressed conclusions that the requests caused delay and were inconsistent with a desire for a speedy trial.

[11] We cite this authored, unpublished opinion for its persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

### J. Summarizing and Weighing the Reasons for Delay

¶70    In summary, 46 months, comprising 1,401 days, elapsed between the filing of the complaint and the trial. As discussed, 17 days during the first period were necessary for the orderly administration of criminal justice, and an additional 175 days during the sixth period were caused by defense counsel's request for an adjournment. None of those days are attributable to the State. Additionally, up to 168 days during the second period and 83 days during the third period are attributable to the State but do not weigh against the State.

¶71    The remaining delay is 958 days, which is more than 31 and one-half months, and more than two-thirds of the total time it took to bring Ramirez to trial. These 958 days are all attributable to and weigh against the State—either because the delay was caused directly by the State for a reason that is not valid, or because the State fails to offer any reason for the delay.

¶72    As discussed above, some portions of the delay that are attributable to the State do not weigh heavily against it. For example, the State's explanations for portions of the fourth, fifth, and eighth periods of delay—the witness's unavailability and the prosecutor's reassessment of the time needed for the trial, the double booking of the courtroom and the prosecutor, and the retirement of the prosecutor, respectively—constitute "neutral" reasons for delay. As a result, these portions are weighed less heavily against the State. *Borhegyi*, 222 Wis. 2d at 512.

¶73    However, other portions of the delay that are attributable to the State must be weighed heavily against it. As noted above, the neutral reasons that the State offers for requesting adjournments of the trial do not fully account for the entirety of the fourth, fifth, and eighth periods of delay, leaving substantial portions of those periods unexplained. To be sure, the State cites the circuit court's finding

that, "while the case was pending, the courthouse moved its entire operation to a temporary location and back," and had "only one courtroom that could accommodate a jury trial for almost a full year" during renovations. It may well be that these facts account for some of the unexplained days of delay in rescheduling the trial, but the State does not expressly argue as much, and the court did not make any express findings on those points.

¶74 Finally, the State fails to offer any explanation for the 169 days that elapsed during the third period of delay, and the 189 days that elapsed during the seventh period of delay. Under *Borhegyi*, we are to take the State's failure to explain that many months of delay as indicating a cavalier disregard for Ramirez's speedy trial rights, which results in those portions of delay weighing heavily against the State. *See id.* at 513.

¶75 For all these reasons, we conclude that the second *Barker* factor weighs fairly heavily against the State.

### III. Assertion of the Speedy Trial Right

¶76 The third *Barker* factor directs us to consider whether Ramirez asserted his speedy trial right. *Urdahl*, 286 Wis. 2d 476, ¶11. A constitutional speedy trial violation can occur even if the defendant does not assert this right—as our supreme court has explained, a defendant does not waive the right to a speedy trial by failing to demand it. *Hatcher v. State*, 83 Wis. 2d 559, 568, 266 N.W.2d 320 (1978); *see also Hadley*, 66 Wis. 2d at 360-61 (Defendants have "no duty to bring [themselves] to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." (quoting *Barker*, 407 U.S. at 527)). In cases in which the defendant does demand a speedy trial, that assertion "is entitled to strong evidentiary weight," *Barker*, 407 U.S. at 531-32, as the assertion "is in itself

probative of prejudice," *Hadley*, 66 Wis. 2d at 364. By contrast, a defendant's complete failure or delay in demanding a speedy trial will undermine the defendant's speedy trial claim if the evidence shows that the defendant was deliberately delaying the trial to "avoid the day of reckoning." *See id.* at 361; *Ziegenhagen*, 73 Wis. 2d at 673.

¶77    As noted, Ramirez asserted his right to a speedy trial twice in pro se filings to the circuit court: once in a September 26, 2018 informal demand that was filed more than 31 months after charges were filed, and again on April 15, 2019, in the form of a motion to dismiss the charges on speedy trial grounds. *See Green v. State*, 75 Wis. 2d 631, 637, 250 N.W.2d 305 (1977) (concluding defendant's motion to dismiss on constitutional speedy trial grounds counted as an assertion of his right to a speedy trial because it put the circuit court and the prosecution on notice of his desire for a speedy trial). The State argues that Ramirez's assertions should be given little to no weight because they were delayed, were submitted pro se, and were accompanied by requests for a change of venue and discovery which, the State contends, were inconsistent with a "credible desire for a speedy trial."

¶78    We begin with the State's argument about Ramirez's delay in asserting his right. It is true that Ramirez's assertions were somewhat delayed, and that delayed assertions are entitled to less weight than early assertions. *See Provost*, 392 Wis. 2d 262, ¶45 (concluding defendant's assertion was not entitled to strong weight because, once the defendant asserted his right over two years after charges were filed, the State brought him to trial in less than eight months); *Urdahl*, 286 Wis. 2d 476, ¶33 (concluding that the third factor weighed against defendant where the defendant moved to dismiss charges on speedy trial grounds 27 months after charges were filed, and three months before the final trial date was scheduled to occur). However, it is also true that it took an additional 14 months to bring Ramirez

32

to trial after his initial assertion of the right, *see **Borhegyi***, 222 Wis. 2d at 518 (weighing delay after Borhegyi's speedy trial demand more heavily against the State), a period of time that is, in itself, presumptively prejudicial, *see **Urdahl***, 286 Wis. 2d 476, ¶12 (one-year delay is presumptively prejudicial).

¶79    We turn to the State's argument about the pro se nature of Ramirez's assertions. Although a circuit court does not erroneously exercise its discretion by declining to consider pro se filings by represented defendants, "a court is not precluded from exercising its discretion to accept and consider" pro se filings. *See **State v. Debra A.E.***, 188 Wis. 2d 111, 138, 523 N.W.2d 727 (1994). Here, Ramirez's pro se filings unambiguously asserted his right to a speedy trial. The circuit court accepted and considered them, and the State does not develop any argument that the court's decisions to do so constitute erroneous exercises of discretion. Nor does the State cite any authority or develop an argument as to why Ramirez's assertions would be entitled to less weight because they were made without the assistance of counsel. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

¶80    Finally, we reject the State's contention that Ramirez's "request for a change of venue" and demands to receive discovery are inconsistent with his assertions of the right to a speedy trial and entitle his assertions to less weight. Although the circuit court made findings suggesting that these actions by Ramirez were inconsistent with an unambiguous desire for a speedy trial, the court's findings on this point are clearly erroneous.

¶81    Beginning with Ramirez's reference to the potential for a change of venue, we observe that Ramirez never actually filed a motion to change venue, nor did he ever specifically request that relief. Instead, the State directs us to references

in Ramirez's April 2019 pro se motion to dismiss and then to his attorney's comments during the June 2019 hearing on that motion. In the motion and during the hearing, Ramirez expressed a desire that his counsel file a motion for a venue change.[12] However, nothing ever came of those references, and the State does not point to any other place in the record in which this issue resurfaced. There is no factual basis for a finding that Ramirez's expressed interest in being tried in a different county delayed the trial in any way, nor that Ramirez's expressions on this topic were inconsistent with his desire that the trial occur speedily. *Cf.* **Scarbrough**, 76 Wis. 2d at 97 (concluding that the defendant's assertion of his speedy trial rights was undermined by the fact that his demand was accompanied by a request for an adjournment so that he could obtain substitute counsel, and the defendant's subsequent representation to the court that he was "giving up those motions for [a] speedy trial," and that he was "never in favor of that").

¶82     Turning to Ramirez's discovery requests, as we have discussed, the State has not identified any evidence that Ramirez's discovery demands caused any delay. Nor can we conclude that a defendant's requests for discovery are inconsistent with a genuine desire for a speedy trial. *See* **Hadley**, 66 Wis. 2d at 360-61 (defendants have "no duty to bring [themselves] to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process" (quoting **Barker**, 407 U.S. at 527)); *see also* **Kohel**, No. 2010AP1057, ¶12 (concluding that

---

[12]     Specifically, in the motion to dismiss, Ramirez identified various grievances he had with his defense counsel, including that "I have aske[d] my attorney to put in a change of trial location. He did not do it." After listing other alleged inaction by his counsel, including counsel's failure to file a motion to dismiss based on the alleged speedy trial violation, Ramirez asserted: "So I a[m] filing this motion because my attorney is refusing to do anything on this case." Then, at the hearing on Ramirez's motion, counsel represented that he had discussed the possibility of seeking a change of venue, but that counsel had not identified any factual or legal basis to file the motion. Later in the hearing, counsel stated: "If Mr. Ramirez instructs me to file [a motion for a change of venue], I will, and then we will rely on the ruling of the Court." Ramirez represented that he wanted counsel to file the motion, but neither counsel nor Ramirez ever filed a motion.

"defendant's dogged pursuit of video evidence and discovery requests generally expressed his due process concerns regarding timeliness," such that his failure to timely assert his speedy trial rights did not weigh against him in an analysis of the *Barker* factors).

¶83   At bottom, we conclude that Ramirez's somewhat delayed pro se assertions of the right to a speedy trial weigh against the State, albeit not as heavily as they would had they been made earlier in the pretrial proceedings.

## IV.  Prejudice

¶84   The fourth *Barker* factor directs us to consider whether Ramirez was prejudiced by the delay in bringing him to trial.  *Urdahl*, 286 Wis. 2d 476, ¶11. When assessing this factor, we consider "the three interests that the right to a speedy trial protects:  prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense."  *Id.*, ¶34. The latter interest "is the most significant because 'the inability of a defendant [to] adequately … prepare [the defense] case skews the fairness of the entire system.'" *Id.* (quoting *Barker*, 407 U.S. at 532).  "The defense may be impaired," for example, "if witnesses die or disappear during a delay; if defense witnesses are unable to recall accurately events of the distant past; or if a defendant is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare [a] defense."  *State v. Leighton*, 2000 WI App 156, ¶23, 273 Wis. 2d 709, 616 N.W.2d 126 (2000) (numbering and citation omitted).  Defendants who are already incarcerated on unrelated charges may also experience special forms of prejudice, including the elimination of the possibility of being sentenced to and serving concurrent sentences, *see* *Hadley*, 66 Wis. 2d at 364-65, and "the possible impact that pending

charges might have on [a defendant's] prospects for parole and meaningful rehabilitation," *see Moore v. Arizona*, 414 U.S. 25, 27 (1973).

¶85    Although "prejudice is an important factor in the analysis, it is not necessary that a defendant show prejudice in fact in order to establish a speedy trial violation." *Urdahl*, 286 Wis. 2d 476, ¶34.  Indeed, the United States Supreme Court has expressly rejected the notion that "an affirmative demonstration of prejudice" is necessary "to prove the denial of the constitutional right to a speedy trial." *Moore*, 414 U.S. at 26.  This is so because prejudice in fact is "not always reflected in the record because what has been forgotten can rarely be shown." *Barker*, 407 U.S. at 532.  Therefore, if the length of the delay is excessive and was not caused by the defendant's conduct, prejudice can exist as a matter of law.  *See Doggett v. United States*, 505 U.S. 647, 652, 655-58 (1992); *Hadley*, 66 Wis. 2d at 364 ("after a protracted period of time, most interests of a defendant are prejudiced as a matter of law whenever the delay, not the result of the defendant's conduct, is excessive" (citing *Barker*, 407 U.S. at 522-23)).  And, as noted above, a defendant's assertion of the right to a speedy trial is "in itself probative of prejudice." *Hadley*, 66 Wis. 2d at 364.

¶86    Here, given the extreme length of the delay as well as Ramirez's assertion of the right to a speedy trial, we presume that he suffered a certain amount of prejudice as a matter of law.  *See id.*  However, Ramirez points to no evidence that was credited by the circuit court that shows he was prejudiced beyond the generalized claims of anxiety, concern, and panic that are common to many who are charged with criminal offenses while their cases are pending.[13]  Ramirez has been

---

[13]  At the postconviction motion hearing, Ramirez testified that he was subjected to more restrictive forms of housing as a result of the pending charges.  However, the circuit court found that this testimony was not credible, and Ramirez does not challenge that finding on appeal.

incarcerated since 1997, and he was not subjected to pretrial incarceration as a result of the delay. Ramirez does not claim that the delay impaired his defense at trial in any manner. Nor does Ramirez argue that the delay eliminated the possibility of receiving concurrent sentences, or that it affected his eligibility for his parole. We therefore conclude that this factor does not weigh strongly in favor or against either party.

## V. Balancing

¶87 The final step of *Barker* requires that we balance the four factors in light of the relevant circumstances of the case.

¶88 As noted, 46 months is the longest total delay in any published constitutional speedy trial case in Wisconsin and it is nearly four times longer than the time needed to trigger the presumption of prejudice.[14] As we have explained, the vast majority—more than 31 months—of the total delay is attributable to the State. The State identifies neutral reasons for some portions of the delay attributed to it, but it fails to explain other sizeable portions.[15] There is no evidence that Ramirez deliberately sought to delay the trial. Additionally, Ramirez twice asserted

---

[14] *Compare Green*, 75 Wis. 2d at 638 (describing delay of 12 months as bordering on denial of defendant's constitutional speedy trial rights); *Borhegyi*, 222 Wis. 2d at 512 (concluding delay of 17 months violated defendant's constitutional speedy trial rights); *Hadley*, 66 Wis. 2d at 363 (concluding delay of 18 months violated defendant's constitutional speedy trial rights); *Ziegenhagen*, 73 Wis. 2d at 664 (concluding delay of 25 months violated defendant's constitutional speedy trial rights).

[15] *See Borhegyi*, 222 Wis. 2d at 513 (State's failure to explain portions of delay evinces cavalier disregard for defendant's constitutional speedy trial rights); *Green*, 75 Wis. 2d at 638 (enumerating a cavalier disregard for the defendant's constitutional speedy trial rights as one of the "elements of delay that are to be weighed most heavily against the state").

his right to a speedy trial, and it took 14 months to bring him to trial after his initial assertion, a length of time that is, in itself, presumptively prejudicial.[16]

¶89 On the other hand, although the State is responsible for causing significant delay, there is no evidence that the State deliberately sought to delay the trial. On at least two occasions, defense counsel did not object to the State's requests for continuances, and Ramirez's assertions of his speedy trial rights were also somewhat delayed. Finally, although the law presumes that Ramirez experienced prejudice, he does not show significant prejudice in fact.

¶90 On balance, we conclude that the *Barker* factors support Ramirez's claim that he was denied the constitutional right to a speedy trial. As noted, the remedy for that constitutional violation is dismissal of the charges. *Urdahl*, 286 Wis. 2d 476, ¶11 (citing *Barker*, 407 U.S. at 522). Accordingly, we reverse the judgment of conviction and circuit court orders denying Ramirez's postconviction motions, and remand for the circuit court to dismiss the complaint.

*By the Court.—*Judgment and orders reversed and cause remanded with directions.

---

[16] *See* **Borhegyi**, 222 Wis. 2d at 518-19 (weighing delay after Borhegyi's speedy trial demand more heavily against the State and concluding that the State's failure to bring him to trial more promptly evinced a cavalier disregard for Borhegyi's speedy trial rights).